ACCEPTED
07-15-00358-CV
SEVENTH COURT OF APPEALS
AMARILLO, TEXAS
12/22/2015 2:31:03 PM
Vivian Long, Clerk

**CASE NO. 07-15-00358- CV**
**IN THE SEVENTH COURT OF APPEALS**
**AMARILLO, TEXAS**

FILED IN
7th COURT OF APPEALS
AMARILLO, TEXAS
12/22/2015 2:31:03 PM
VIVIAN LONG
CLERK

**TERRY T. BLEVINS**
**Appellant**

**vs.**

**VINCENT ALI, A/K/A JAMES VINCENT HOUSTON**
**AND MARTHA HOUSTON**
**Appellees**

**Appealed from the 12th Judicial Court**
**of Walker County, Texas**

**APPELLANT TERRY T. BLEVINS' BRIEF**

Mynde S. Eisen
State Bar No. 06503950
Law Office of Mynde S. Eisen, P.C.
P. O. Box 630749
Houston, Texas 77263
(713) 266-2955
(281) 343-1089
wyndeeisen@sbcglobal.net

Michael Boltz
State Bar No. 05280300
Boltz Law
1400 Woodloch Forest Drive, Suite 540
The Woodlands, Texas 77380
(832) 381-3079
(832) 218-2400 (fax)
email: boltz@boltzlaw.com

ATTORNEYS FOR APPELLANT
TERRY BLEVINS

APPELLANT REQUESTS ORAL ARGUMENT

CASE NO. 10-15-00358- CV
IN THE SEVENTH COURT OF APPEALS
AMARILLO, TEXAS

TERRY T. BLEVINS
Appellant

vs.

VINCENT ALI, A/K/A JAMES VINCENT HOUSTON
AND MARTHA HOUSTON
Appellees

IDENTITY OF PARTIES & COUNSEL

Appellant:            Terry T. Blevins

Appellant's Counsel:  Mynde S. Eisen
                      State Bar No. 06503950
                      Law Office of Mynde S. Eisen
                      P.O. Box 630749
                      Houston, Texas 77263
                      (713) 266-2955
                      (281) 343-1089 (fax)
                      email: wyndeeisen@sbcglobal.net

                      Michael Boltz
                      State Bar No. 05280300
                      Boltz Law
                      1400 Woodloch Forest Drive, Suite 540
                      The Woodlands, Texas 77380
                      (832) 381-3079
                      (832) 218-2400 (fax)
                      email: boltz@boltzlaw.com

Appellees:                 Vincent Ali a/k/a James Vincent Houston
                           Martha Houston

Appellee's Counsel:        Jacob Paschal
                           State Bar No. 24065878
                           Haney Moorman Paschal, P.C.
                           1300 11th Street, Suite 405
                           Huntsville, Texas 77340
                           (936) 295-3712
                           (936) 295-3714 (fax)
                           email: jpaschal@hmp-attorneys.com

# TABLE OF CONTENTS

IDENTITY OF PARTIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

TABLE OF CONTENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iv

INDEX OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . vii

STATEMENT OF CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT ON ORAL ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

ISSUES PRESENTED . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

SUMMARY OF ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

ARGUMENT AND AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

    I.     The Trial Court Erred in Finding That No Contract Existed Between Blevins and Appellees (Issue No. 1 Restated) . . . . . . . . . . 10

          The Trial Court Erred in Finding That Appellees Were the Legal Owners of the Property and Were Entitled to Possession (Issue No. 2 Restated) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

          The Trial Court Erred in Not Finding Blevins Is Entitled to Specific Performance and Not Awarding Damages for Breach of the Contract and Erred in Awarding Appellees Reasonable Rent (Issue No. 3 Restated) . . . . . . . . . . . . . . . . . . . . . . 10

          A.     Appellees and Blevins Had an Oral Contract for the Purchase of the Property . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

               1.     Contract Falls Within the Equitable Exception to the Statute of Frauds . . . . . . . . . . . . . . . . 12

2. The Trial Court's Finding That There Was No Contract Was Against the Great weight and Preponderance of the Evidence . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

B. Appellees Were Not Entitled to Possession of the Property . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

C. Blevins Is Entitled to Damages . . . . . . . . . . . . . . . . . . . . . . . 19

1. Blevins Is Entitled to a Finding That There Is a Breach of Contract . . . . . . . . . . . . . . . . . . . . 19

2. Blevins Is Entitled to Specific Performance . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

3. Blevins Is Entitled to Contract Damages for Breach of Contract . . . . . . . . . . . . . . . . . 22

4. The Trial Court's Finding That Appellees Were Entitled to Reasonable Rent Was Error . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

II. The Trial Court's Findings That Appellees Made No Negligent And/or Fraudulent Misrepresentations, and/or Did Not Commit Fraud and/or Did Not Violate the Texas Deceptive Trade Practice Act Were Against the Great Weight and Preponderance of the Evidence (Issue No. 4 Restated) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

The Trial Court's Findings of Fact Were Against the Great Weight and Preponderance of the Evidence (Issue No. 5 Restated) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

A. The Trial Court's Findings of Facts Were Against the Great weight and Preponderance of the Evidence . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

1. The Trial Court's Findings of Fact Regarding the Contract Issues Are Against the Great Weight and Preponderance of the Evidence ................... 27

2. The Trial Court's Finding that the Appellees Made No Negligent Misrepresentations Was Error .................... 28

    a. Blevins Is Entitled to Damages for Negligent Misrepresentations ........................ 31

3. The Trial Court's Finding That There Was No Fraud Was Error .............................. 31

    a. Blevins Is Entitled to Recover His Damages for Fraud .................... 36

4. The Trial Court Erred in Not Finding That Appellees Engaged in Violations under the DTPA ..................................... 37

    a. Blevins Is Entitled to Recover Actual Damages and Treble Damages under Tex. Bus. & Com. Code §17.46(a) ..................... 39

CONCLUSION AND PRAYER ..................................... 39

CERTIFICATE OF SERVICE ...................................... 42

# INDEX OF AUTHORITIES

## CASES

*Allied Towing Service v. Mitchell*
   833 S.W.2d 577 (Tex. App.-Dallas 1992, no writ) . . . . . . . . . . . . . . . . . . 38

*Apex Fin. Corp. v. Garza*
   155 S.W. 3d 230 (Tex. App-Dallas 2004, pet. denied) . . . . . . . . . . . . . . 22

*Baylor University v. Sonnichsen*
   221 S.W.3d 632 (Tex. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36, 37

*Blankenship v. Brown*
   399 S.W.3d 303 (Tex. App-Dallas 2013, pet. denied) . . . . . . . . . . . . . . . 32

*Bradford v. Vento*
   48 S.W.3d 749 (Tex. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

*Bryant v. Clark*
   163 Tex. 596, 358 S.W.2d 614 (1962) . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Burleson State Bank v. Plunkett*
   27 S.W.3d 605 (Tex. App-Waco-2000, pet. denied) . . . . . . . . . . . . . . . . 33

*Camden Mach. & Tool, Inc. v. Cascade Co.*
   870 S.W.2d 304 (Tex. App.-Forth Worth 1993, no writ.) . . . . . . . . . . . . 38

*Chambers County v. TSP Development, LTD*
   63 S.W.3d 835 (Tex. App.-Houston [14th Dist.] 2002, no pet.) . . . . . . . . 16

*Continental Oil Company v. Doornbos*
   402 S.W.2d 879 (Tex. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Davis v. Campbell*
   524 S.W.2d 790 (Tex. App.-Dallas 1975) *rev'd on other grounds*
   572 S.W.2d 660 (Tex. 1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 13

*Dittman v. Cerone*,
    2013 WL 5970356 (Tex. App.-Corpus Christi 2013, no pet.). . . . . . . . 11, 22

*Dow Chemical v. Francis*
    46 S.W.3d 237 (Tex. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*DSA, Inc. v. Hillsboro Indep. Sch. Dist.*
    973 S.W.2d 552, (Tex. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

*Elizondo v. Gomez*
    957 S.W.2d 862 (Tex. App-San Antonio 1997, pet. denied) . . . . . . . . . . . 13

*Esty v. Beal Bank, S.S.B.*
    298 S.W.3d 280 (Tex. App.-Dallas 2009, no pet.) . . . . . . . . . . . . . . . . . . 31

*Fed. Land Bank Ass'n of Tyler v. Sloane*
    825 S.W.2d 439 (Tex. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

*Fender v. Farr*
    362 S.W.2d 539 (Tex. App-Texarkana 1953, no writ) . . . . . . . . . . . . . 35-36

*Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc.*
    960 S.W. 2d 41 (Tex. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32, 36

*Four Bros. Boat Works v. Tesoro Petroleum Cos., Inc.*
    217 S.W.3d 653 (Tex. App.-Houston [14th Dist.] 2006, pet. denied) . . . . . 32

*Frady v. May*
    23 S.W.3d 558, (Tex. App.–Fort Worth 2000, pet. denied) . . . . . . . . . . . . 16

*Gates v. Asher*
    154 Tex. 538, 280 S.W.2d 247 (1955) . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Hamon v. Allen*
    457 S.W.2d 384 (Tex. Civ. App-Corpus Christi 1970, no writ) . . . . . . . . 24

*Hooks v. Bridgewater*
  111 Tex. 122, 229 S.W. 1114 (Tex. 1921) . . . . . . . . . . . . . . . . . . . . . . 12, 13

*House v. Glazer*
  62 S.W.3d 795 (Tex. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

*Johnson v. Brewer & Pritchasrd, P.C.*
  73 S.W.3d 193 (Tex. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

*Kinder Morgan N. Tex. Pipeline, L.P. v. Justiss*
  202 S.W.3d 427 (Tex. App-Texarkana 2006, no pet.) . . . . . . . . . . . . . . . 14

*Larsen v. Langford & Assocs., Inc.*
  41 S.W.3d 245 (Tex. App.-Waco 2001, pet. denied) . . . . . . . . . . . . . . . . 34

*Life Ins. of VA. v. Murray Inv. Co.*
  646 F.2d 224 (5th cir. 1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

*Lykken v. Kindsvator*
  2014 WL5771832  (Tex. App- Fort Worth 2014, no pet.) . . . . . . . . . . . . . 35

*Mar. Overseas Corp. v. Ellis*
  971 S.W. 2d 402 (Tex. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Marketic v. U.S. Bank Nat'l Ass'n*
  436 F. Supp.2d 842 (N.D. Tex 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . 33

*Moore v. Mohon*
  514 S.W.2d 508 (Tex. Civ. App-Waco 1974, no writ) . . . . . . . . . . . . . . . 11

*Morrow v. Shotwell*
   477  S.W.2d 538 (Tex. 1972) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Myre v. Meletio*
  307 S.W.3d 839 (Tex. App-Dallas, 2010,  pet. denied) . . . . . . . . . . . . 32, 33

*Robbins v. Capozzi*
     100 S.W.3d 18 (Tex. App.-Tyler 2003, no pet.) . . . . . . . . . . . . . . . . . . . 34

*Rus-Ann-Dev. Inc. v.  ECGC, Inc.*
     222 S.W.3d 921 (Tex. App-Tyler 2007, no pet.) . . . . . . . . . . . . . . . . . . 21

*Schlumberger Tech. Corp. v. Swanson*
     959 S.W.2d 171 (Tex. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

*Scott v. Sebree*
     986 S.W.2d 365 (Tex. App-Austin 1999, pet. denied) . . . . . . . . . . . . . . . 37

*Smith v. Nat'l Resort Communities*
     585 S.W. 2d 655 (Tex. 1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

*Sun Oil v. Bennett*
     125 Tex. 540, 84 S. W. 447 (1935) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Texacally Joint Venture v. King*
     719 S.W.2d 652(Tex. App.-Austin, 1986, writ ref'd n.r.e.) . . . . . . . . . . . . 21

*Tex. Builders v. Keller*
     928 S.W.2d 479, 481 (Tex. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Tukua  Investments, LLC v.  Spenst*
     413 S.W.3d 786, 796  (Tex. App-El Paso, 2013, pet. denied) . . . . . . . . .  33

*Van Marcontell v. Jacoby*
     260 S.W.3d 686, 691 (Tex. App.-Dallas 2008, no pet.) . . . . . . . . . . . . 29, 32

*W. O. Bankston Nissan, Inc. v. Walters*
     754 S.W. 2d 127 (Tex. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

*Wal-mart Stores, Inc. v. Bertrand*
     37 S.W.3d 1 (Tex. App-Tyler 2000, pet. denied) . . . . . . . . . . . . . . . . . . . 14

*Ward v. Ladner*
    322 S.W.3d 692, (Tex. Ct. App.-Tyler 2010, no pet.) . . . . . . . . . . . . . 14, 21

*Weitzel v. Barnes*
    691 S.W. 2d 598 (Tex. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38

*Westrope v. Chambers' Estate*
    51 Tex. 178 (1879) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

*Wilson v. Fisher*
    144 Tex. 53, 188 S.W.2d 150 (1945) . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

## Statutes

Tex. Bus. & Com. Code § 17.46 *et seq* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 40

Tex. Bus. & Com. Code §17.46(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . vi, 37, 38, 39

Tex. Bus. & Com. Code §17.46 (b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37

Tex. Bus. & Com. Code §17.46(b)(24) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38

Tex. Bus. & Com. Code §17.50(b)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39

Tex. Bus. & Com. Code §27.01 . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32, 33, 37, 40

Tex. Bus. & Com. Code §27.01(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

Tex. Bus. & Com. Code §322 *et seq* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

## Rules

Tex. R. App. 39.1(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

## STATEMENT OF THE CASE

Appellant Terry Blevins ("Blevins" or "Appellant") brought suit against Appellees Vincent Ali, a/k/a James Vincent Houston ("Appellee Ali") and Martha Houston (collectively "Appellees") for statutory fraud in the sale of real estate, negligent and intentional misrepresentation, common law fraud, breach of contract, unjust enrichment, promissory estoppel and claims under the Texas Deceptive Trade Practices Act. Blevins sued for specific performance and damages arising out of the breach of contract, negligent misrepresentations and fraud. Blevins also sought treble damages under the Texas Deceptive Trade Practices Act (the "DTPA").

On May 6, 2015 the case was tried to the Trial Court on the merits. On May 21, 2015, the Trial Court issued its verdict finding for Appellees and against Blevins. The verdict was reduced to judgment on June 12, 2015. In the Judgment, the Trial Court made findings that were against the great weight and preponderance of the evidence and were beyond the findings that the Trial Court found it its verdict. The Court, upon Blevins' request, entered its Findings of Fact and Conclusions of Law on August 8, 2015. After Blevins Motion for New Trial was denied by the Trial Court, Blevins filed its appeal of the Final Judgment.

References to the Clerk's Record are cited as CR _____. References to the Reporter's Record are cited as RR_____.

**STATEMENT OF ORAL ARGUMENT**

The Court should grant oral argument for the following reasons:

a.        Oral argument would give the Court a more complete understanding of the facts presented in this appeal. Tex. R. App. 39.1(c).

b.        Oral argument would allow the Court to better analyze the complicated legal issues presented in this appeal. Tex. R. App. 39.1(c).

c.        Oral argument would significantly aid the Court in deciding this case.

# ISSUES PRESENTED

## ISSUE NO. 1:

**THE TRIAL COURT ERRED IN FINDING THAT NO CONTRACT EXISTED BETWEEN BLEVINS AND APPELLEES**

## ISSUE NO. 2:

**THE TRIAL COURT ERRED IN FINDING THAT APPELLEES WERE THE LEGAL OWNERS OF THE PROPERTY AND WERE ENTITLED TO POSSESSION.**

## ISSUE NO. 3:

**THE TRIAL COURT ERRED IN NOT FINDING BLEVINS IS ENTITLED TO SPECIFIC PERFORMANCE AND NOT AWARDING DAMAGES FOR BREACH OF THE CONTRACT AND ALSO ERRED IN AWARDING APPELLEES REASONABLE RENT**

## ISSUE NO. 4

**THE TRIAL COURT FINDINGS THAT APPELLEES MADE NO NEGLIGENT AND/OR FRAUDULENT REPRESENTATIONS AND/OR DID NOT COMMIT FRAUD AND/OR DID NOT VIOLATE THE TEXAS DECEPTIVE TRADE PRACTICE ACT WERE AGAINST THE GREAT WEIGHT AND PREPONDERANCE OF THE EVIDENCE**

## ISSUE NO. 5

**THE TRIAL COURT'S FINDINGS OF FACT WERE AGAINST THE Great weight AND PREPONDERANCE OF THE EVIDENCE**

## STATEMENT OF FACTS

In August 2013, Appellees wanted to sell two tracts of land in Walker County, Texas, more particularly described as Tracts 4 and 5 located on 558 Hawthorne Rd, New Waverly, Texas 77358 ( the "Property"). RR 22. Blevins was interested in purchasing the two tracts of land. Based upon representations by Appellee Ali that Appellees owned the Property free and clear and could deliver title to the Property, Blevins decided to purchase the Property.

Subsequently, Blevins and Appellees reached an agreement that Blevins would purchase the Property for $160,000.00.RR 23, 227-28. Blevins agreed to make an initial down-payment of $30,000.00 to be paid over a period of six months at $1,250.00 per week beginning September 2013 and continuing through February 2014.RR 23-24. After the initial down-payment, Blevins' payments would be reduced to $750.00 a week and a real estate closing to officially transfer title would take place at Walker County Title on March 1, 2015. RR 24. RR 13, 24-25, 32.

The agreement between Blevins and Appellee was further memorialized in a videotaped recording[1], in tax statements pertaining to the Property and through warranty deeds filed by Appellees. RR 31, 38, 43, Ex. 13,14, 15, 21, 22, 23, 28. These

[1]Appellee Ali and Blevins walked the property and Blevins videotaped the representations being made by Appellee Ali. RR 28, 31. On the video, Appellee Ali makes the specific representation that the Property was all his to transfer and would belong to Blevins. RR 31, Ex. 28.

representations were relied upon by Blevins to his detriment. RR 32, 42-48.

Blevins paid the complete down-payment of $30,000. RR 33. Based on the electronically recorded reaffirmation of the verbal agreement, Blevins immediately began making the $750.00 weekly payments per the agreement between the parties. RR 32. In addition, an un-executed Deed of Trust, Warranty Deed and Promissory Note for the closing on the Property was forwarded to the title company by Appellees' attorneys Penrice. RR 49. When the closing did not occur as scheduled on March 1, 2014, Blevins inquired about the status of the closing to Appellee Ali. Appellee Ali represented that the lawyers were holding up the closing and he could not get the lawyers to go faster. RR 35.

Thereafter, on June 9, 2014, after Blevins continued to inquire about the status of closing and transfer of the title, Appellees tendered to Blevins three recorded warranty deeds (the "Warranty Deeds") which Appellee Ali represented, conveyed the Property to Blevins. RR Ex. 21, 22, 23. Although the Warranty Deeds lacked a traditional legal identification, they contained Property ID numbers that Appellant Ali represented identified the Properties and which correlated to the Walker County Appraisal District's ("WCAD") identification numbers for Tract 4 and Tract 5. RR 37-38. Appellee Ali represented to Blevins that he filed the Warranty Deeds to change the owners name from Appellees to Blevins. RR 37-39.

Blevins also independently researched the WCAD records and discovered that tax statements had been changed into his name because of the filing of the Warranty Deeds. RR 38. Therefore, he believed that he was the proper owner of the Property. RR 38, Ex. 14, 15. Blevins, relying on the Appellees' representations that he owned the Property, continued to make the weekly payments as agreed. RR 38-39. Blevins was still waiting for the closing to occur.

On June 20, 2014, still concerned about the lack of an official closing, Blevins contacted the title company to see why the closing had not yet occurred. RR 43. The title company informed Blevins that the title company could not insure title because Appellees had numerous deeds that had transferred the Property into and out of Appellees' name which clouded title. RR 46, 126-128, Ex. 33. Further, Blevins discovered that the title company had notified Appellee Ali's attorney of these issues as early as March 24, 2014. RR 136, Ex. 7.

Despite learning about the title issues in March 2014, Appellees never informed Blevins of any title problems. To the contrary, Appellees insisted they had good title on the property, and continued to accept Blevins' payment. RR 47.

Having learned that he could not obtain good title to the Property, Blevins ceased making payments and initiated the lawsuit against Appellees. RR 46. Blevins had already paid $42,750.00 toward the purchase Property. RR 43.

Additionally, Blevins had paid Appellees $5,000 to make repairs to the Property which Appellees never completed. RR 43. Further, Blevins made repairs to the septic system at his cost and made other valuable improvements to the Property based upon Appellees' representations that Blevins owned the Property. RR 58, 94-95, 224.

The case was tried to the Trial Court on May 6, 2015. On May 21, 2015, the Court rendered its verdict finding in favor of the Appellees. CR 162. The verdict contained findings of fact. The Court, upon Blevins ' request, entered its Findings of Fact and Conclusions of law (the "FOF") on August 6, 2015. CR 165. The Trial Court FOF made findings beyond those issues listed in the Court's May 12, 2015 verdict. CR 162, 165. Prior to any hearing on entry of a judgment, and over Blevins' objection to the form of the Final Judgment being proposed, the Court signed the Final Judgment. CR 163-164. The Final Judgment included rulings that were beyond the scope of the Trial Court's verdict. CR 162. These findings in the Final Judgment were against the great weight and preponderance of the evidence. CR 163-164.

Blevins timely filed a Motion for New Trial which was denied by the Trial Court. CR 167. Blevins then timely filed his Notice of Appeal. CR 234.

## SUMMARY OF ARGUMENT

The Trial Court's findings that there was no contract between the parties was against the great weight and preponderance of the evidence. The undisputed evidence at the trial showed that both parties believed that they had an agreement for the purchase of the Property. The terms were specific and were not disputed. The sole issue arose because of the failure of Appellees to perform under the Contract and deliver good title of the Property to Blevins. Contrary to the findings of the Trial Court, this issue does not negate the fact that there was a contract. In fact, Appellees testified that they had every intention of honoring the contract, thereby admitting that the contract existed. Despite this overwhelming evidence, the Trial Court erroneously concluded that no contract existed.

Further, the Trial Court's ruling that the Appellees are the legal owners of the Property and that Appellees are entitled to the use and enjoyment of the land was error. This ruling contradicted the overwhelming evidence of the contract which existed and was being performed and Appellees ultimate breach of the agreement because of the cloud on the title of the Property. Appellee Ali admitted he did not own all of Tract 4, and that it was his intention to transfer all of his interest in the Property to Blevins. RR 31, 245. Based on its erroneous ruling, and despite no evidence that this was ever a rental transaction, the Trial Court found that Appellees

-8-

were entitled to reasonable rent. The court wrongfully and arbitrarily ruled that "monies expended by Plaintiff Terry T. Blevins should be applied as reasonable rental for the use of the property". CR 186.

Finally, the Findings of Fact and Conclusions of Law entered by the Court exceeded the scope of the findings articulated in the Court's original May 21, 2015 verdict, and were against the great weight and preponderance of the evidence. The Trial Court's verdict only identified four particular findings. CR 162. The Findings of Fact and Conclusions of Law entered on August 6, 2015 identified 36 findings of fact 26 conclusions of law. CR 183-187. Certain findings, pertaining to property ownership, DTPA, fraudulent misrepresentation and related claims were not even referenced in the original verdict and were not adequately addressed since the court concluded there was no contract or agreement. However, the evidence clearly showed that Appellees made negligent and/or fraudulent misrepresentations that were designed to induce Blevins into purchasing the Property. The Court ignored this evidence, and against the great weight and preponderance of the evidence entered findings that no fraudulent or negligent misrepresentations were made, no fraud was committed and that there were no violations of the Tex. Bus. & Com. Code §17.46 *et seq.* This was simply error by the Trial Court.

**ARGUMENT AND AUTHORITIES**

I.  **THE TRIAL COURT ERRED IN FINDING THAT NO CONTRACT EXISTED BETWEEN BLEVINS AND APPELLEES (Issue No. 1 Restated)**

**THE TRIAL COURT ERRED IN FINDING THAT APPELLEES WERE THE LEGAL OWNERS OF THE PROPERTY AND WERE ENTITLED TO POSSESSION (Issue No. 2 Restated)**

**THE TRIAL COURT ERRED IN NOT FINDING BLEVINS IS ENTITLED TO SPECIFIC PERFORMANCE AND NOT AWARDING DAMAGES FOR BREACH OF THE CONTRACT AND ALSO ERRED IN AWARDING APPELLEES REASONABLE RENT (Issue No. 3 Restated)**

A.  **Appellees and Blevins Had an Oral Contract for the Purchase of the Property**

Blevins plead and sought actions for breach of contract damages, specific performance and a declaratory judgment to determine that the contract between the parties was in existence and that it had been performed by Blevins to justify awarding him damages and/or specific performance. See CR 6. Although there was overwhelming evidence in the record, the Trial Court held that no contract existed because there was no "meeting of the minds". CR 162, 183-187. This was simply error on the part of the Trial Court.

A contract for the sale of land must contain essential terms of a contract, expressed with certainty and clarity so that it is understood to show the intention of the parties. *Bryant v. Clark,* 163 Tex. 596, 358 S.W.2d 614 (1962); *Wilson v. Fisher*,

144 Tex. 53, 188 S.W.2d 150 (1945); *Moore v. Mohon*, 514 S.W.2d 508, 511 (Tex. Civ. App-Waco 1974, no writ).   If the essential elements of a contract are present, then the contract is enforceable.  *See Dittman v. Cerone*, 2013 WL 5970356 *4-5 (Tex. App-Corpus Christi 2013, no pet.).  *See also* Tex. Bus. & Com. Code §322 *et seq.*

In the case at bar, Appellees and Blevins entered into an oral contract for the purchase of the Property.  They agreed to a specific price of $160,000.00, a down payment of $30,000, and payments of $750 weekly for the remainder of the purchase price.  RR 13, 23-25, 32. 226-228.   The oral contract was consummated by Blevins' payment in full of the down payment under the agreed terms and Blevins' continued weekly payments which were accepted by Appellees. RR 23-25, 32.  The agreement was also supported by the fact that Blevins took possession and moved his family in to the mobile home and continuously occupied the Property until he was forced to move out after the judgment was entered in this case.  The contract was further memorialized by the video recording.  RR 31,  Ex. 28 and by Appellees tendering Blevins the three Warranty Deeds.  RR 37, 38, Ex. 21, 22, 23.  Additionally, Ali's own attorney sent over the promissory note and deed of trust with instructions to the title company to open title.  RR113.

    1.    **Contract falls within the Equitable Exception to the Statute of Frauds**

Although real estate contracts normally need to be in writing, an equitable exception exists in this case. An oral contract which has been partly performed may be enforced in equity if "denial of enforcement would amount to a 'virtual fraud' in the sense that the party acting in reliance of the contract has suffered a substantial detriment for which he has no adequate remedy and the other party, if permitted to plead the statute would, reap an unearned benefit." *Davis v. Campbell*, 524 S.W.2d 790, 793 (Tex. App.-Dallas 1975) *rev'd on other grounds* 572 S.W.2d 660 (Tex. 1978). The Texas Supreme Court has held that in order for a real estate contract to fall outside the statute of frauds, three elements are necessary: (1) payment of consideration, whether it be in money or services; (2) possession by the person seeking to purchase the property, and (3) the making of valuable and permanent improvements upon the land. *Hooks v. Bridgewater*, 111 Tex. 122, 229 S.W. 1114, 1116 (Tex. 1921); *Davis*, 524 S.W.2d at 793.

There is no doubt that these three elements existed in this case. Blevins paid consideration and began performance of the oral contract by paying the $30,000 down payment and the weekly payments of $750 per week. RR 13, 23-25, 32. Blevins took possession of the Property[2] and retained possession until after the Trial

---

[2]Additionally, Appellees tendered three Warranty Deeds to transfer the Property to Blevins because the closing had not yet occurred. RR 37-38, Ex. 21, 22, 23.

Court entered its Final Judgment.[3]  Additionally Blevins made substantial improvements to the Property. RR 58, 94-95.  To not acknowledge the contract in this case would create a virtual fraud. *See Davis*, 524 S.W.2d at 790.  Blevins, acting in reliance on the contract,  suffered substantial detriment by having to move his family off the Property after having paid substantial money towards the purchase of the property while Appellees reaped the unearned benefit of sums far beyond reasonable rent for the property.  Essentially, the Trial Court allowed Appellees to benefit from their own fraud and misrepresentations.  *See Davis*, 524 S.W. 2d 790.

Additionally, Appellee Ali admitted the existence of the agreement by tendering the three Warranty Deeds to Blevins.  This admission by Appellees should have removed any statute of frauds questions. *See Elizondo v. Gomez,* 957 S.W.2d 862, 864-865 (Tex. App-San Antonio 1997, pet denied); *Hooks* 229 S.W. at 1116 (Tex. 1921)

---

[3]Blevins was forced to vacate the Property after the Final Judgment because the amount of supersedeas bond and the cash required to obtain the same was beyond his reach.  The Final Judgment erroneously provided that he give possession to Appellees.

2.      **The Trial Court's Finding That There Was No Contract was Against the Great weight and Preponderance of the Evidence**

An appellate court tests the factual sufficiency of the evidence by examining the entire record to determine whether a finding is clearly wrong and unjust. *Ward v. Ladner,* 322 S.W.3d 692, 702 (Tex. Civ. App-Tyler 2010, no pet.); *Kinder Morgan N. Tex. Pipeline, L.P. v. Justiss,* 202 S.W.3d 427, 437 (Tex. App-Texarkana 2006, no pet.). The court must consider and weigh all of the evidence, not just the evidence which supports the finding. *Mar. Overseas Corp. v. Ellis*, 971 S.W.2d 402 (Tex. 1998). *See also Dow Chemical v. Francis*, 46 S.W.3d 237 (Tex. 2001) (court can set aside a verdict if the evidence if the findings is so against the weight and preponderance of the evidence that it is clearly wrong and unjust).

When circumstances are equally consistent with either of two facts and nothing shows that one is more probable than the other, neither fact can be inferred a no evidence challenge must be sustained. *See Ward*, 322 S. W. 2d at 702; *Wal-mart Stores, Inc. v. Bertrand,* 37 S.W.3d 1, 12 (Tex. App-Tyler 2000, pet. denied).

No evidence was ever presented by the Appellees that Blevins was merely "renting the property." The overwhelming evidence was that it was both parties intention to consummate a sale of the property, the only question became was as to whether or not Appellees could transfer all of the land that they were selling. RR 224-225, 224-225. There was no dispute that the monies tendered by Blevins and accepted

by Appellees were for the purchase of the Property.  RR 226. There was also no question or testimony by either side that the Property was not to be sold, but merely rented by Blevins. Both parties intended that a sale take place under the terms of the oral agreement.  RR 13, 24-25, 245, Ex. 32.  It was only when Blevins discovered that Appellees could not deliver marketable title, that he stopped  paying the agreed purchase price and initiated the lawsuit.  RR 46.

Appellee Ali specifically testified that he did not dispute that the parties had an agreement for the purchase of the property. RR 224-225,  245.  At trial he stated "I am still holding fast to the original agreement".  He also admitted it wouldn't be wrong of Mr. Blevins to rely on his representations. RR 225.

Further, it was undisputed that as of June 20, 2014, Blevins paid $42,750.00 towards the purchase of property. RR 243, 244-245.  Additional evidence of the "meeting of the minds" was the fact that Appellees specifically provided and recorded the three Warranty Deeds which he represented conveyed the Property to Blevins. See RR, 37-38, Ex. 21, 22, 23.  The recording of the three Warranty Deeds caused the WCAD to recognize Blevins as the owner of the Property.[4]  RR 38.  Additionally, Blevins walked the Property with Appellee Ali and Appellee Ali at each property

---

[4]Although Appellee Ali testified that the WCAD's records were wrong this testimony was merely his opinion and offered no expert testimony or testimony from WCAD to support this testimony.  He admitted it was just his opinion. RR 206, 211.  This testimony is contradicted by his own actions of preparing and filing the Warranty Deeds.

marker identified each tract by name and stated "This is all yours" to Blevins. RR Ex. 28. Blevins relied on these representations that he owned the Property because he continued to make the weekly payments. RR 38, 42.

Additionally, the video recording showed that Appellees intended to transfer and sell the Property to Blevins. RR 28, 31, Ex. 28. Appellee's attorney Penrice also testified that there was an agreement to purchase the property. RR 49, Ex. 2, 3, 4.

The above referenced evidence shows not only was there a contract, but there had been performance under the contract and that the parties had always intended that the transaction to be a sale of the Property. Therefore, the Trial Court's finding that there was no "meeting of the minds" was against the great weight and preponderance of the evidence.

B. **Appellees were Not Entitled to Possession of the Property**

Under a contract for sale of real estate, equitable title passes to the buyer. *Chambers County v. TSP Development, LTD*, 63 S.W.3d 835 (Tex. App.-Houston [14th Dist.] 2002, pet denied). *See Frady v. May*, 23 S.W.3d 558, 565 (Tex. App.–Fort Worth 2000, pet. denied). Therefore, in the case at bar, equitable title passed to Blevins when he made the down payment and paid the weekly payments.

Yet, despite all of the evidence to the contrary, the Trial Court erroneously found that Appellees were the owners of the Property. This finding indicated that

Appellees had good title to the property; therefore, the Trial Court granted Appellees possession of the property. Since equitable title passed upon the formation of the contract between Blevins and Appellees, this finding by the Trial Court was error. The erroneous finding in the verdict was manifested by the Trial Court's erroneous finding that there was no agreement. When the Trial Court found that there was no agreement, it basically disregarded the other issues at the trial.

However, as shown above, the overwhelming evidence at trial, warranted a finding that an agreement existed for the purchase of the Property. Since there was an agreement and Blevins was performing under the agreement until the time of the breach, equitable title had passed to Blevins and Appellees were not entitled to possession of the property.

Despite Appellee Ali's representations to Blevins that he owned all of the Property, the evidence at trial showed that Appellees did not own all of the interest that they sold to Blevins. Martin, the title company's representative testified that he could not insure either Tract 4 or Tract 5 because of the title issues resulting from constant transfers of the Property over the years in and out of Appellees' name. RR 136, 137. Martin further testified that Appellees were aware or should have been aware of the title problems since 2012. RR 136-137. Martin did testify, that after Appellees' attorney, Penrice, insisted that the title policy should be issue, he prepared

an affidavit of adverse use and possession as to Tract 5 and upon the signing of the same would insure Tract 5, but he still could not insure Tract 4. RR 140 Appellees never signed or recorded the adverse possession affidavit. RR 140. Martin, further testified that Appellees did not have marketable title for either Tract 4 or Tract 5. RR 137-140, and in his opinion Appellees had committed fraud. RR 140-142.

Appellee Ali testified that he knew he did not have title to all of Tract 4, but that he had only a 75% interest in Tract 4. RR 224-225. This testimony directly contradicted his representations prior to trial that he owned all of the Property. See RR Ex. 28. This evidence at trial showed that Appellees knew that they did not own all of Tract 4, but clearly made negligent or fraudulent misrepresentations to induce Blevins to purchase the Property. However, rather than using this finding to determine the negligent and/or fraudulent misrepresentation claims, the Court erroneously interpreted this testimony to find that there was no "meeting of the minds" and wrongfully awarded possession to Appellees despite Blevins equitable title in the property.

Additionally, the Trial Court completely ignored the fact that Appellees had transferred the Property to Blevins by the three Warranty Deeds. See Ex. 21, 22, 23. This transfer by Appellees further supported the fact that Blevins held title to the Property. Therefore, the Trial Court's awarding Appellees possession was error.

C.     **Blevins is Entitled to Damages**

Since the Trial Court failed to recognize the existence of the oral contract, it never addressed the issue of the breach of contract and the contractual damages for such breach of contract.     As shown above, since a contract existed and it was breached by Appellees, Blevins is entitled to recover damages for the breach.

1.     **Blevins Is Entitled to a Finding That There Is a Breach of Contract**

As shown above, Appellees did not have proper title to convey the Property to Blevins, despite Appellees' representations to the contrary.  Appellees knew or should have known that they did not have good title prior to selling it to Blevins, yet they offered it for sale, entered into an agreement for the purchase, accepted both the down payment and the weekly payments toward the purchase price and surrendered possession to Blevins.  Since, as shown above, a contract existed, Appellees breached the contract by not being able to deliver marketable title, or if he had marketable title he breached the contract by not delivering title.  Blevins did not discovery the breach until the title company refused to insure title because of the cloud on the title caused by Appellees.  See RR 46, 126-128.  Since, Appellees could not and cannot deliver all of Tract 4, and did not deliver marketable title to any of the Property, Appellees breached the contract.  Due to the fact that Appellees could only deliver 75% of Tract 4, Blevins was also entitled to reformation of the contract.

The basic remedy of reformation of the contract is that the true agreement between the parties be shown. *Continental Oil Company v. Doornbos*, 402 S.W.2d 879, 883 (Tex. 1996); *Sun Oil v. Bennett*, 125 Tex. 540, 84 S. W. 447 (1935). Once the agreement is established, equity may reform the contract so as to conform it to the agreement that can be enforced. *Doornbos*, 402 S.W.2d at 883.

In the present case, there was no dispute that the agreement existed. RR 24, 32, 33, 99, 168, 170, 205, 226, 228, 250. In fact, Appellant Ali admitted he would stick to the "original agreement" to convey all of his interests in both Tracts. RR 224-225, 245. Appellant Ali transferred all of his interests by recording and tendering to Blevins the three Warranty Deeds. RR 37-39,, Ex.21, 22, 23. However, the evidence showed that Appellee Ali, despite previous representations, only owned an undivided 3/4 interest in Tract 4. RR 46-47, Ex. 28, 33. The Trial Court should have reformed the contract to be able to enforce specific performance of the contract that existed. See *Doornbos*, 402 S.W.879. Therefore, the Trial Court erred in not reforming the Contract and finding that a breach occurred.

## 2. Blevins is Entitled to Specific Performance

A party seeking specific performance of a real estate contract must prove that he has diligently and timely performed or tendered performance of all obligations set forth in the contract. *Ward*, 322 S.W.3d at 698; *Texacally Joint Venture v. King*, 719 S.W.2d 652, 653 (Tex. App.-Austin, 1986, writ ref'd n.r.e.). Price is an important factor required for the sale of property. *Ward*, 322 S.W.3d at 698. *See Rus-Ann-Dev. Inc. v. ECGC, Inc.*, 222 S.W.3d 921 (Tex. App-Tyler 2007, no pet.) To be entitled to specific performance, Blevins needed to prove that he paid or was paying the purchase price agreed upon by the parties. *Ward*, 322 S.W.3d at 698. *See King*, 719 S.W.2d at 653. Price was not an issue in the case at bar as both parties had agreed to the purchase price of $160,000. The existence of the contract, as shown above was confirmed by the representations on the video recording (Ex. 28) and the transfer of possession of the Property to Blevins. Appellees further confirmed the existence of the contract by tendering and recording the three Warranty Deeds., and the letter from his attorney transmitting closing documents to the title company. RR 37-39, 113, Ex. 2, 3, 4, 5, 6, 21, 22, 23.

The Warranty Deeds, despite lacking metes and bounds, were sufficient to transfer title because they contained identification numbers utilized by WCAD for the Property. These identification numbers allowed a person to obtain the legal

descriptions listed with WCAD for the Property. Ex. 21, 22, 23. A deed does not have to contain the metes and bounds of the property to be enforceable. The deed must only furnish enough data to identify the property with reasonable certainty. *Tex. Builders v. Keller*, 928 S.W.2d 479, 481 (Tex. 1986) (citing *Morrow v. Shotwell*, 741 S.W.2d 538, 539 (Tex. 1972). Further "[i]f enough appears in the description so that a person familiar with the area can locate the premises with reasonable certainty, it is sufficient to satisfy the statute of frauds" *Apex Fin. Corp. v. Garza*, 155 S.W. 3d 230, 237 (Tex. App-Dallas 2004, pet. denied) (citing *Gates v. Asher*, 154 Tex. 538, 280 S.W.2d 247, 248 (1955). A description validity is not affected by knowledge or intent. *Dittman,* 2013 WL *6 .

Since Appellees' intent was to sell the Property to Blevins, and Appellees breached the contract, Blevins is entitled to specific performance. Therefore, the Trial Court erred in not awarding Blevins specific performance.

3. **Blevins is Entitled to Contract Damages for Breach of Contract**

Alternatively, should be able to recover his contractual damages. Blevins paid $42,750 towards the purchase of the Property. RR 43. He also had paid taxes on the Property of $1,0311.11 and insurance of $856.00. RR 56, 58. Blevins also paid Appellees $5000.00 for repairs to the Property that were never made. Blevins further incurred $11,177.56 for repairs to the septic system. RR 57-58, Ex. 31. Absent

-22-

recovery for specific performance, Blevin is entitled to his contractual damages of $89,900. RR 66.

Whether he is entitled to specific performance or contractual damages as shown above, Blevins is also entitled to recover his reasonable and necessary attorneys fees of $35,166.88, $7,500.00 for appeals to the Court of Appeals and $7,000 for a writ to the Supreme court and $7,500 if the writ is accepted by the Supreme Court.  RR 298.

The Trial Court erred in not awarding any damages to Blevins.  This case should be remanded for the determination of the damages, either specific performance and Blevins attorney's fees or his contractual damages, including attorney's fees.

4.    **The Trial Court's Finding that Appellees were Entitled To Reasonable Rent Was Error**

When the Trial Court found that no contract existed and wrongfully awarded possession to the Appellees, it also found that Appellees were entitled to the $42,750 paid by Blevins as reasonable rent.  This was error on the part of the Trial Court.

No evidence was presented at trial that either of the parties had intended for the transaction to be one of a "rental transaction."  As shown above, there was a valid and binding contract between the parties.  Appellees breached the contract by not being able to deliver marketable title.  Upon formation of the contract, i.e. when Blevins paid the down payment to Appellees and took possession, equitable title passed to Blevins. *See Hamon v. Allen,* 457 S.W.2d 384 (Tex. Civ. App-Corpus Christi 1970,

-23-

no writ). Further, Appellee Ali admitted that he received payments from Blevins towards the purchase or property totaling $42,750.00 and he provided the three Warranty Deeds out of "respect" and to acknowledge that Blevins was paying him for the purchase of property. RR 224. Appellee Ali never testified that the payments from Blevins were considered to be rent or applied as rent in any manner. There was no pleading for rent and this issue was not tried by consent as no evidence that this was ever to be any type of rental transaction was presented. There Despite this overwhelming evidence, the Trial Court arbitrarily held that Blevins' payments were for rent for use of the Property.

Appellees were not entitled to rent during the period that Blevins occupied the title as they had transferred equitable title to Blevins. The only reason that the entire contract defaulted was because of Appellees' default. The awarding of reasonable rent to Appellees was rewarding them for their own breach of contract and fraud.

II.. **THE TRIAL COURT'S FINDINGS THAT APPELLEE'S MADE NO NEGLIGENT AND/OR FRAUDULENT MISREPRESENTATIONS, AND/OR DID NOT COMMIT FRAUD AND/OR DID NOT VIOLATE THE TEXAS DECEPTIVE TRADE PRACTICE ACT WERE AGAINST THE Great weight AND PREPONDERANCE OF THE EVIDENCE (Issue No. 4 Restated)**

. **THE TRIAL COURT'S FINDINGS OF FACT WERE AGAINST THE Great weight AND PREPONDERANCE OF THE EVIDENCE (Issue No. 5 Restated)**

Along with breach of contract claims, Blevins brought claims for negligent misrepresentation, common law fraud, statutory fraud in the sale of the real estate, and violations of the Deceptive Trade Practice Act. It is apparent from the findings that the Trial Court entered that it based the entire findings on the fact on the basis that there was no contract between the parties.

A. **Trial Court's Findings of Fact were Against the Great Weight and Preponderance of the Evidence**

The Trial Court specifically found that:[5]

"1.    Vincent Ali (Defendant) offered to sell 4.3 acres of land referred to as Tract 5 or 558 Hawthorne Road, New Waverly, Texas 77358 to Terry Blevins (Plaintiff");

"2.    Defendant also offered to sell 3 acres of a called 4.3 acres of land referred to as Tract 4 to Plaintiff.

"3.    Although Vincent Ali (Defendant) and Terry Blevins (Plaintiff) discussed the sale of the Tract 5 and Tract 4, there was not a meeting of the minds or mutual assent between the parties on the essential terms of the agreement;

"4.    There were no clear and definite terms regarding the sale of the property"

"5.    The parties did not come to an agreement on what property would be conveyed in the sale, the time when the conveyance would occur, the amount of property that would be conveyed, and the interest in the property that would be conveyed."

---

[5]There were 36 Findings of Facts in total.   Blevins has only listed the most germaine ones to the arguments set forth herein.

"8.   There was not any general warranty deed with vendor's lien signed by Defendants related to the property at issue."

"11.   Plaintiff did not have an interest in the property at issue."

"12.   Defendants did not transfer or convey the property at issue to Plaintiff."

"13.   Defendants have a superior right to possession of the property at issue".

"14.   Plaintiff paid Defendant $42,500; Monies expended by Plaintiff were reasonable rental value for the property for the time that the Plaintiff occupied the property.

"15.   Defendants did not commit false, misleading, or deceptive acts, and/or omissions;

"19.   Defendants did not make false representations or false promises to Plaintiff;

"20.   Defendants did not conceal or fail to disclose facts that were not disclosed to Plaintiff;

"22.   Plaintiff did not justifiably rely on Defendants to his detriment;

"23.   Plaintiff did not sustain damages as a result of any acts or omissions of Defendants;

"25.   Plaintiff did not rely on promises made by Defendant to Plaintiff's detriment"

"27.   Plaintiff did not suffer pecuniary loss that was proximately caused by Plaintiff's justifiable reliance on information obtained by Defendants"

"29.   Defendants did not make material false representations to Plaintiff with the knowledge of their falsity or with reckless disregard of the truth with the intention that such representations be acted upon by Plaintiff"

"31.    Defendants were not enriched by any transaction between Defendants and Plaintiff;

"32.    Plaintiff did not make any valuable and permanent improvements upon the land with the consent of Defendant"

"33.    Plaintiff did not pay consideration for the property at issue; .. .

RR 183-187.

Although the Trial Court listed the above as findings of fact, in fact, most of them are merely conclusory statements and the Trial Court did not list any testimony that supported his findings. The Court's findings are against the great weight and preponderance of the evidence.   Further, most of these findings were not part of the Trial Court's initial findings in its original verdict.  CR 162.  Only after the Trial Court entered the Appellees form of Final Judgment over Blevins' objections without any hearing, and after Blevins' request for findings of fact, did he expand his findings to include the erroneous findings.  CR 163, 165

1.    **The Trial Court's Findings of Fact Regarding the Contract Issues Are Against the Great Weight and Preponderance of the Evidence**

As shown above, the Court's findings that there was no meeting of the minds or mutual assent on the essential terms of the agreement, (FOF No. 3); there was no clear definite terms regarding the sale of the property at issue, (FOF No. 4); that there was no agreement as to what property would be conveyed, (FOF No.6); that there was

-27-

not any general warranty deed related to the property at issue, (FOF No. 8);[6] were against the great weight and preponderance of the evidence and error on the part of the Trial Court. CR 183-184 As shown above, the parties clearly had agreed on terms of the contract and had begun performance of the contract.

2. **The Trial Court's Finding That the Appellees Made No Negligent Misrepresentations Was Error**

The Trial Court made specific findings of fact that "Defendants did not commit false, misleading or deceptive acts, practices and/or omissions, (FOF No. 15); that Defendants did not make false misrepresentations or false promises to Plaintiff, (FOF No. 19); that Defendants did not conceal or fail to disclose facts that were not disclosed to Plaintiff, (FOF 20); that Plaintiff did not justifiably rely on Defendants to his detriment, (FOF 22); that Plaintiff did not sustain damages as a result of any acts or omissions of Defendants, (FOF 23); that Plaintiff did not rely on promises made by Defendant to Plaintiff's Detriment, (FOF 25); Plaintiff did not suffer pecuniary loss that was proximately caused by Plaintiff's justifiable reliance on information obtained by Defendants, (FOF 27); that Defendants did not make material false representations to Plaintiff with knowledge of their falsity or with reckless disregard of the truth,

---

[6]The Court's statement that there was not a general warranty deed with a vendor's lien is correct, but implies that you have to have a vendor's lien to transfer the property. This is incorrect. The three Warranty Deeds that were part of the evidence in this case which transferred the property. See RR Ex. 21-23. There is no requirement that a general warranty deed contain a vendor's lien in the sale of real estate.

(FOF 29); and that Defendants were not enriched by any transaction between Defendants and Plaintiff, (FOF 31). CR 184-185. These findings of fact are against the great weight and preponderance of the evidence and do not support the Trial Court's finding of no negligent misrepresentations.

The elements of negligent misrepresentation are: (l) the representation is made by a defendant in the course of his business, or in a transaction in which he has a pecuniary interest; (2) the defendant supplies "false information" for the guidance of others in their business; (3) the defendant did not exercise reasonable care or competence in obtaining or communicating the information; and (4) plaintiff suffers pecuniary loss by justifiably relying on representation. *Fed. Land Bank Ass'n of Tyler v. Sloane,* 825 S.W.2d 439, 442 (Tex. 1991); *Van Marcontell v. Jacoby,* 260 S.W.3d 686, 691 (Tex. App.-Dallas 2008, no pet).

In the present case, all of the elements of negligent misrepresentation are met. Appellee Ali did not dispute that he did not have clear title to tract 4, but instead testified that he only intended to convey all of his interests in Tract 4. RR 224, 231-232. Yet, he never once disclosed to Blevins that he did not own all of Tract 4, and failed to disclose the fact that it was not insurable. Instead, he made representations that the closing was merely delayed, but that he had every "intention of honoring everything that I said to him" RR 245.

All of Appellee Ali's representations to Blevins were made in a transaction in which he had a pecuniary interest, i.e. he would be receiving and did receive all funds paid by Blevins. RR 43. Appellee Ali supplied "false information" in order to induce or guide Blevins into purchasing the property. RR 37-38, Ex. 21, 22, 23. Appellee Ali did not exercise reasonable care or competence in obtaining or communicating the information to Blevins. Appellee knew or should have known he did not own all of Tract 4 and that the Property was not insurable from a title company's standpoint.[7] RR 136-137, 140-142, 155. Blevins was justified on relying on Appellee Ali, who admitted this fact. RR 48, 49, 225. Blevins suffered pecuniary loss by justifiably relying on Appellees' representations. RR 43, 55, 56, 57-58, 66. 91, 298. All elements were met to show support Blevins cause of action for negligent misrepresentations. The Trial Court erred in not finding that Blevins was entitled to recover damages for negligent misrepresentations.

---

[7]Testimony at trial showed that Appellee Ali was aware of the title problems as early as 2012 when he attempted to refinance the property. RR136-137.

a.   **Blevins Is Entitled to Damages for Negligent Misrepresentations**

The Texas Supreme Court had held that the proper measure of damages for negligent misrepresentations are  damages necessary to compensate the plaintiff for pecuniary loss to him as a result of the misrepresentation. *Fed. Bank Assoc.*, 825 S.W.2d at 442.  This includes the pecuniary loss suffered otherwise as a consequence of the plaintiff's reliance on the misrepresentation.  Pecuniary loss has been described as out-of-pocket costs.  *See Esty v. Beal Bank, S.S.B.,* 298 S.W.3d 280, 302 (Tex. App.-Dallas 2009, no pet.) *citing DSA, Inc. v. Hillsboro Indep. Sch. Dist.* 973 S.W.2d 552, 663-64 (Tex. 1998).

As shown in Section  I(C)(3) above, Blevins suffered pecuniary loss of $89,900 and attorney's fees of $35,166.88.  Blevins is entitled to recover this pecuniary loss as a result of the Appellee's negligent misrepresentations.  The Court should remand this case for this determination.

3.   **The Trial Court's Finding That There Was No Fraud Was Error**

Similarly, the Trial Court's findings of fact set forth in Section II (A) (1) above are against the great weight and the preponderance of the evidence to support the Trial Court's finding of no fraud.   Again the evidence clearly showed undisputed evidence of the fraud which caused damages to Blevins.

The elements of common law fraud are: (1) a material misrepresentation was made; (2) the representation was false; (3) when the representation was made the speaker knew it was false or made the statement recklessly without any knowledge of the truth and as a positive assertion; (4) that the speaker made the representation with the intent that the other party should act on it; (5) the party acted in reliance on the representation; and (6) the party thereby suffered injury. *Van Marcontell*, 260 S.W.2 at 691. *See Johnson v. Brewer & Pritchard, P.C.*, 73 S.W.3d 193, 211 n.45 (Tex. 2002); *Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc.,* 960 S.W. 2d 41, 47 (Tex. 1998); *See also* Tex. Bus. & Com. Code §27.01. A subcategory of fraud is fraud by nondisclosure. *Schlumberger Tech. Corp. v. Swanson*, 959 S.W.2d 171, 181 (Tex. 1997); *Blankenship v. Brown*, 399 S.W.3d 303, 308 (Tex. App-Dallas 2013, pet. denied). Fraud by omission can be as misleading as a positive misrepresentation of fact where the party has a duty to disclose. *Myre v. Meletio*, 307 S.W.3d 839, 843 (Tex. App-Dallas, 2010, pet. denied); *Four Bros. Boat Works v. Tesoro Petroleum Cos., Inc.*, 217 S.W.3d 653, 670 (Tex. App.-Houston [14th Dist.] 2006, pet. denied). Silence can be equivalent to a false representation. *See Bradford v. Vento*, 48 S.W.3d 749, 755 (Tex. 2001).

In a real estate transaction, a seller is under a duty to disclose material facts that would not be discoverable that a reasonable investigation and inquiry would not

uncover. *Smith v. Nat'l Resort Communities, Inc.*, 585 S.W.2d 655, 658 (Tex. 1979); *Myre*, 307 S.W. 3d at 843.

Tex. Bus. & Com. Code §27.01 creates a statutory cause of action for fraud in a real estate transaction when the following elements are present: (1) a person makes a false representation of a past or existing material fact in a real estate transaction to another person for the purpose of inducing the making of a contract; and (2) the false representation is relied on by the person entering into the contract. Tex. Com. Code §27.01(a); *Tukua Investments, LLC v. Spenst*, 413 S.W.3d 786, 796 (Tex. App.-El Paso 2013, pet. denied). Statutory fraud under Tex. Bus. & Com. Code §27.01 applies to false misrepresentations or promises to induce another to enter int a contract for the sale of property. *Tukua Investments,* 413 S.W.3d at 796; *Marketic v. U.S. Bank Nat'l Ass'n*, 436 F. Supp.2d 842, 856 (N.D. Tex 2006). Section 27.01 does not require an actual conveyance of the property, but merely a contract to convey the property which was induced by a false representation will be statutory fraud. *See Tukua Investments*, 413 S.W.3d at 796; *Burleson State Bank v. Plunkett*, 27 S.W.3d 605, 611 (Tex. App-Waco-2000, pet. denied). *See also Life Ins. of VA. v. Murray Inv. Co.*, 646 F.2d 224, 227 n.2 (5th Cir. 1981)(Section 27.01 applies to transactions involving the actual or potential sale or purchase of real estate). Statutory fraud differs from common law fraud only in that it does not require proof that the

misrepresentations were made knowingly and/or recklessly. *Robbins v. Capozzi*, 100 S.W.3d 18 (Tex. App.-Tyler 2003, no pet.); *Larsen v. Langford & Assocs., Inc.,* 41 S.W.3d 245, 249 (Tex. App.-Waco 2001, pet. denied).

In the case at bar, the evidence showed that Blevins and Appellees agreed to enter into the contract to purchase Tract 4 and Tract 5, RR 22, 23, 24, 32, 33, 35, 81, 99, 113. There is no dispute that Appellee told Blevins that he was buying all of Tract 4 and Tract 5. RR 23, 25, Exs. 12, 22, 23 28. In fact, this conversation was memorialized on the video recording that was played into evidence and admitted into evidence. See Ex. 28. Appellee Ali told Penrice, his attorney, that he owned Tract 4, and told him to include Tract 4 in the Deed. RR 172. Ali admitted that he owned all of the land. RR 294. Throughout the entire time that Blevins paid him, Ali continued to represent to him that he had good title and owned all of the Property. RR 47. To further induce Blevins into continuing to pay, Appellee Ali gave Blevins the three Warranty Deeds conveying him the Property to him. RR 223, 234. Ex. 21, 22, 23. Additionally, Blevins requested getting a survey and Appellee Ali also told him it was not necessary as he had the survey. RR 104-105.

Further, Appellee Ali knew or should have know that title issues existed as early as 2012 when he tried to refinance the property and could not get title insurance on the Property. RR 128, 137. His attorney, Penrice knew that the Property was not

insurable in 2012, and testified that it was his "practice" to tell his client, inferring that Appellees knew that the Property was not insurable. RR129, 131. Additionally, Appellee Ali knew in March 2014 that he could not deliver good title when Martin, the title company representative sent out his letter to Penrice. RR132, 132, 134. Yet, despite all of this knowledge, he continued to represent to Blevins that he was transferring the Property and would deliver title. He failed to disclose any of the problems he knew or should have known concerning the title issues. Further, he continued to deceive Blevins by giving him three Warranty Deeds which he represented transferred title to Blevins, despite knowing he did not own all of Tract 4 and that the title company was refusing to insure the Property.

When Appellee Ali gave the three Warranty deeds to Blevins, he again misrepresented his ownership. If a grantor does not own the land that he attempts to convey, he breaches the covenant of seizen at the very moment that the deed is made. *Lykken v. Kindsvator*, 2014 WL5771832 *3 (Tex. App- Fort Worth 2014, no pet.). *See Westrope v. Chambers' Estate*, 51 Tex. 178, 187 (1879). The covenant for right to convey is a present covenant and if it is broken the breach occurs at the moment of the creation. The delivery of the deed which contains such a covenant causes an instantaneous breach. *Fender v. Farr*, 362 S.W.2d 539, 542-43 (Tex. App-Texarkana

953, no writ). The three Warranty Deeds contained representations of conveyance and title which Appellee Ali did not have, thus causing an instantaneous breach.

Blevins relied upon the representations that he was buying both Tract 4 and Tract 5 as he continued to pay the purchase price until he independently discovered in late June through the title company, that good title could not be conveyed and that Appellees might not fully own Tract 4 and Tract 5. RR 135, 136, 155, 191, 222.

All of these facts supported findings of fraud, which the Trial Court appeared to have ignored. Instead, the Trial Court erroneously decided that there was no meeting of the minds and based its verdict solely on the contractual issue.

### a.      **Blevins Is Entitled to Recover His Damages for Fraud**

Two measures of direct damages exist under Texas law for recovery when there is common law fraud: out of pocket damages and benefit of the bargain damages. *Baylor University v Sonnichsen,* 221 S.W.3d 632, 637 (Tex. 2007); *Formosa Plastics Corp., USA,* 960 S.W.2d at 49-50; *W. O. Bankston Nissan, Inc. v. Walters,* 754 S.W. 2d 127, 128 (Tex. 1988). Out of pocket damages measure the value of that which was parted with and the value of which was received. *Baylor University,* 221 S.W.3d at 637.[8] Although the Trial Court ruled that there was not contract, Blevins is not barred

---

[8]Although the Supreme Court has held that the statute of frauds does not allow recovery for the benefit-of-the-bargain damages when the claim arises from a contract that has been held to be unenforceable, *House v. Glazner,* 62 S.W.3d 795, 800 (Tex. 2001), it does not bar out of pocket damages. *Baylor University,* 221 S.W.3d at 636.

from recovering his out of pocket damages as fraud damages. *Baylor University,* 221 S.W.2d at 636. Blevins presented evidence that his out of pocket damages were $89,900. RR at 43, 55, 56-58, 66. Additionally, Blevins presented evidence of his mental anguish, but the Court made no findings. RR 49-61, 59, 183, 187.

The same damages available for common law fraud are available for statutory fraud under Section 27.01. *Scott v. Sebree*, 986 S.W.2d 365, 368 (Tex. App-Austin 1999, pet. denied). The defrauded party may also be awarded specific performance where the facts of the case require specific performance to ensure a just result. *Scott,* 986 S.W.2d at 368.

The Trial Court made no findings as to any type of fraud damages because it improperly found that no fraud existed. This Court should remand the case for determination of the fraud damages.

4.    **The Trial Court Erred in Not Finding that Appellees Engaged in Violations Under the DTPA**

Similarly, as with the fraud causes of action, the Trial Court erred in finding that the Appellees were not engaged in deceptive acts that gave rise to claims under the Tex. Bus. & Com. Code §17.46 (a) and (b) (the "DTPA"). The overwhelming evidence showed Appellees actions were designed solely to induce Blevins to buy the Property for which they knew they could not deliver marketable title.

The DTPA provides for recovery for false, misleading or deceptive practices in the conduct of any trade or commerce. Tex. Bus. & Com. Code § 17.46 (a). This also includes failure to disclose information that was known at the time of the transaction, if the failure to disclose was intended to induce the consumer into the transaction into which the consumer would not have entered had the information been disclosed. Tex. Bus. & Com. Code §17.46(b)(24). *Camden Mach. & Tool, Inc. v. Cascade Co.*, 870 S.W.2d 304, 311 (Tex. App.-Forth Worth 1993, no writ). The conduct must be the producing cause of the harm to the party. *Weitzel v. Barnes*, 691 S.W. 2d 598, 600 (Tex. 1985). Reliance and foreseeability are not required in order to recover. *Allied Towing Service v. Mitchell,* 833 S.W.2d 577, 585 (Tex. App.-Dallas 1992, no writ); *Cascade*, 870 S.W. 2d at 311.

As shown in Section II(A)(3) above, the same evidence that supported the cause of fraud, also supported Blevins' cause of action under Tex. Bus. & Com. Code §17.46(a). Appellees represented to Blevins that they owned all of Tract 4 and Tract 5 and they could deliver marketable title. Yet, the evidence at trial, which was not controverted showed that Appellees knew that the Property could not be insured by a title company because (1) there were issues as to how they had acquired the Property, RR 126-137; (2) Appellees at most only owned an undivided 3/4 interest in Tract 4; RR46, 136-137; and (3) they were unable to get title insurance on the

-38-

Property when they attempted to refinance the Property in 2012, RR 137. All of this evidence supported the causes of action pled by Blevins under Tex. Bus. & Com. Code §17.46(a).

a. **Blevins is Entitled to Recover Actual Damages and Treble Damages Under Tex. Bus. & Com. Code §17.46(a)**

Blevins is entitled to recover his economic damages under the Tex. Bus. & Com. Code §17.50(b)(1). As show in Section above, Blevins has incurred $89,900 in actual out-of-pocket damages. RR 66. Additionally, Blevins is entitled to recover for mental anguish for which he presented evidence. Tex. Bus. & Com. Code §17.50(b)(1). RR 67. Blevins is also entitled to treble damages under Tex. Bus. & Com. Code §17.50(b)(1). Since the Trial Court erroneously found that there were no deceptive acts on behalf of Appellees, it never reached the issue of damages. Therefore, this case should be remanded for the determination of these damages.

## CONCLUSION AND PRAYER

The great weight and preponderance of the evidence at this Trial clearly shows that there was a contract between Appellees and Blevins for the purchase of two tracts of land and that Appellees breached the contract. The great weight and preponderance of the evidence also shows that Appellees made fraudulent and/or negligent misrepresentations to induce Blevins into the purchase of the Property and that Appellees failed to disclose material facts. This same overwhelming evidence is

sufficient to support findings for statutory fraud under Tex. Bus. & Com. Code §27.01, common law fraud and causes of action under Tex. Bus. & Com. Code §17.46 *et seq.* The evidence showed that Blevins relied on the misrepresentations made by Appellees to his detriment and he incurred damages. Therefore, this Court should reverse the Trial Court and enter judgment that Appellees breached the contract, made material negligent and/or fraudulent representations and violated Tex. Bus. & Comm. Code §17.46 *et seq.*

This Court should reform the contract and award Blevins specific performance awarding him the property, or alternatively his contractual damages of $89,900; damages for statutory fraud, negligent and/or fraudulent misrepresentations and/or violations of the DTPA in the amount of $89,900, his attorneys fees of $35,166.78, $7,500 for an appeal to this Court, $7,500 if a petition is filed with the Supreme Court, and $7,500 if the petition is accepted by the Supreme Court; treble damages under the DTPA and mental anguish damages.

Alternatively, or additionally, this Court should remand the case for determination of damages.

Respectfully submitted,

**LAW OFFICE OF MYNDE S. EISEN, P.C.**

*Mynde S. Eisen*

By /s/ Mynde S. Eisen

      Mynde S. Eisen
      State Bar No. 06503950
      P. O. Box 630749
      Houston, Texas 77263
      (713) 266-2955
      (281) 343-1089
      wyndeeisen@sbcglobal.net

        and

      Michael Boltz
      State Bar No.  05280300
      Boltz Law
      1400 Woodloch Forest Drive, Suite 540
      The Woodlands, Texas   77380
      (832) 381-3079
      (832) 218-2400 (fax)
      email: boltz@boltzlaw.com

ATTORNEYS FOR APPELLANT
TERRY BLEVINS

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of Appellant's Brief has been served on all parties in interest as listed below by ecf transmission and/or by facsimile and/or by depositing the same in the U.S. mail, certified mail, return receipt requested on this ___ day of December, 2015.

/s/ Mynde S. Eisen

P. Jacob Paschal
Haney, Moorman, Paschal, P.C.
1300 Eleventh Street, Suite 405
Huntsville, Texas 77340

**CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME
LIMITATIONS, TYPEFACE REQUIREMENTS AND
TYPE STYLE REQUIREMENTS**

This brief complies with the type-volume limitation of Tex R. App. P 9.4 (i)(B) because this brief contain 8857 words excluding the parts of the brief exempted by Tex. R. App. P. 9.4(i)(1)

The brief complies with the typeface requirements of Tex. R. App. P. 9.4(e) and the type style requirements of Tex. R. App. P. 9.4(d) (because this brief has been prepared in a proportionally spaced typeface using Word Perfect X7 in 14 point, Times New Roman font.

_Mynde S. Eisen_
_____
Mynde S. Eisen

CASE NO. 07-15-00358- CV
IN THE SEVENTH COURT OF APPEALS
AMARILLO, TEXAS

TERRY T. BLEVINS
Appellant

vs.

VINCENT ALI, A/K/A JAMES VINCENT HOUSTON
AND MARTHA HOUSTON
Appellees

Appealed from the 12th Judicial Court
of Walker County, Texas

APPELLANT TERRY T. BLEVINS' APPENDIX

Mynde S. Eisen
State Bar No. 06503950
Law Office of Mynde S. Eisen, P.C.
P. O. Box 630749
Houston, Texas 77263
(713) 266-2955
(281) 343-1089
wyndeeisen@sbcglobal.net

Michael Boltz
State Bar No. 05280300
Boltz Law
1400 Woodloch Forest Drive, Suite 540
The Woodlands, Texas 77380
(832) 381-3079
(832) 218-2400 (fax)
email: boltz@boltzlaw.com

ATTORNEYS FOR APPELLANT
TERRY BLEVINS

# TABLE OF CONTENTS

| Tab No. | Document | Record Cite |
|---------|----------|-------------|
| 1. | Trial Court Judgment | CR 163-164 |
| 2. | Findings of Fact and Conclusions of Law | CR 183-187 |
| 3. | Trial Court's Verdict | CR 162 |
| 4. | Tex. Bus. & Com. Code § 27.01 | |
| 5. | Tex. Bus. & Com. Code § 17.46 | |
| 6. | Tex. Bus. & Com. Code § 17.50 | |
| 7. | Plaintiff/Counter Defendant's Request for Findings of Fact & Conclusions of Law | CR 165-173 |
| 8. | Plaintiff/Counter Defendant's Objection To the Court's Restated Findings and Request for Additional Findings of Fact & Conclusions of Law | CR 196-214 |

TAB NO. 1

## CAUSE NO. 1427232

| | | |
|---|---|---|
| TERRY T. BLEVINS | § | IN THE DISTRICT COURT |
| Plaintiff, | § | |
| | § | |
| vs. | § | WALKER COUNTY, TEXAS |
| | § | |
| VINCENT ALI A/K/A | § | |
| JAMES VINCENT HOUSTON | § | |
| AND MARTHA HOUSTON | § | |
| Defendants. | § | 12TH JUDICIAL DISTRICT |

## FINAL JUDGMENT

BE IT REMEMBERED, On May 06, 2015, the Court heard this case. Because a jury was not requested, the Court decided all fact questions and issues of law at the trial.

Defendants, Vincent Ali a/k/a James Vincent Houston and Martha Ali a/k/a Martha Houston, appeared in person and through their attorney of record, P. Jacob Paschal. Defendants announced ready for trial.

Plaintiff, Terry T. Blevins appeared, in person and through his attorney of record, Michael Boltz. Plaintiff announced ready for trial.

The Court considered the pleadings and records on file in this cause, the evidence, and arguments of counsel and is of the opinion that the following judgment should be rendered:

1. There was no contract between Plaintiff and Defendants;

2. Defendants Vincent Ali a/k/a James Vincent Houston and Martha Ali a/k/a Martha Houston are the legal owners of the property located at 558 Hawthorne Road, New Waverly, Texas 77358;

3. Plaintiff Terry T. Blevins is ORDERED to vacate the subject premises on or before July 1, 2015;

4. Plaintiff Terry T. Blevins does not have right, title, or interest in the property located at 558 Hawthorne Road, New Waverly, Texas 77358;

5. Defendants Vincent Ali a/k/a James Vincent Houston and Martha Ali a/k/a Martha Houston, as the legal owners of the property located at 558 Hawthorne Road, New Waverly, Texas 77358, are entitled to use and enjoyment of the property;

FILED
TIME 11:30
12 DAY OF June 20 15
ROBYN FLOWERS
District Clerk, Walker County
By _____
Deputy

6. Monies expended by Plaintiff Terry T. Blevins are applied as reasonable rental for the use of the property;

7. Each of the parties shall bear their own court costs and attorneys fees;

8. All other causes of action asserted by any of the parties to this lawsuit are expressly DENIED; and

9. All relief, including but not limited to an award of damages, not expressly granted in this Final Judgment is DENIED.

THEREFORE, it is ORDERED, ADJUDGED, and DECREED that judgment is rendered as specifically set out above in this Final Judgment.

IT IS FURTHER ORDERED, that Defendants shall have all writs of execution and other process necessary to enforce this judgment.

This judgment finally disposes of all parties and all claims and is appealable.

SIGNED ON ___12 June___, 2015

_Donald Kraemer_
JUDGE PRESIDING

TAB NO. 2

CAUSE NO. 1427232

| | | |
|---|---|---|
| TERRY T. BLEVINS | § | IN THE DISTRICT COURT |
| Plaintiff, | § | |
| | § | |
| vs. | § | WALKER COUNTY, TEXAS |
| | § | |
| VINCENT ALI A/K/A | § | |
| JAMES VINCENT HOUSTON | § | |
| AND MARTHA HOUSTON | § | |
| Defendants. | § | 12TH JUDICIAL DISTRICT |

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

BE IT REMEMBERED, on May 06, 2015, the Court heard this case. Because a jury was not requested, the Court decided all fact questions and issues of law at the trial.

## FINDINGS OF FACT

After hearing the testimony and considering the evidence presented, the Court made the following findings of fact:

1.  Vincent Ali (Defendant) offered to sell 4.3 acres of land referred to as Tract 5 or 558 Hawthorne Road, New Waverly Texas 77358 to Terry Blevins (Plaintiff);

2.  Defendant also offered to sell 3 acres of a called 4.3 acres of land referred to as Tract 4 to Plaintiff;

3.  Although Vincent Ali (Defendant) and Terry Blevins (Plaintiff) discussed the sale of Tract 5 and Tract 4, there was not a meeting of the minds or mutual assent between the parties on the essential terms of the agreement;

4.  There was no written agreement between the parties;

5.  There were no clear and definite terms regarding the sale of the property at issue;

6.  The parties did not come to an agreement on what property would be conveyed in the sale, the time when the conveyance would occur, the amount of property that would be conveyed, and the interest in the property that would be conveyed;

7.  There was not any promissory note or deed of trust signed by Plaintiff related to the property at issue;

FINDINGS OF FACT AND CONCLUSIONS OF LAW
PAGE 1 OF 5

FILED
TIME _____
___ DAY OF ___ 20__
ROBYN FLOWERS
District Clerk, Walker County
By_____ 183
Deputy

8. There was not any general warranty deed with vendor's lien signed by Defendants related to the property at issue;

9. Defendants used and occupied the property at issue from 1986 until the time that Plaintiff moved onto the property in September 2013;

10. Plaintiff occupied the property from September 2013 through May 6, 2015;

11. Plaintiff did not have an interest in the property at issue;

12. Defendants did not transfer or convey the property at issue to Plaintiff;

13. Defendants have a superior right to possession of the property at issue;

14. Plaintiff paid Defendant $42,500; Monies expended by Plaintiff were reasonable rental value for the property for the time that Plaintiff occupied the property;

15. Defendants did not commit false, misleading, or deceptive acts, practices, and/or omissions;

16. Defendants did not:

   a. cause confusion or misunderstanding as to the source, sponsorship, approval, or certification of goods or services;

   b. represent that goods or services have sponsorship, approval, characteristics, ingredients, uses benefits, or quantities which they do not have or that a person has a sponsorship, approval, status, affiliation, or connection which he does not have;

   c. represent that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model if they are of another;

   d. advertise goods or services with intent not to sell them as advertised;

   e. fail to disclose information concerning goods or services which was known at the time of the transaction with the intention to induce the consumer into a transaction which the consumer would not have entered had the information been disclosed;

   f. advertise goods or services with intent not to supply a reasonable expectable public demand;

17. Defendants did not make or breach any express or implied warranties to Plaintiff;

18. Defendants did not engage in an unconscionable action or course of action to the detriment of Plaintiff by taking advantage of the lack of knowledge, ability, experience, or capacity of Plaintiff to a grossly unfair degree;

19. Defendants did not make false representations or false promises to Plaintiff;

20. Defendants did not conceal or fail to disclose material facts to Plaintiff;

21. Defendants did not have a duty to disclose facts that were not disclosed to Plaintiff;

22. Plaintiff did not justifiably rely on Defendants to his detriment;

23. Plaintiff did not sustain damages as a result of any acts or omissions of Defendants;

24. Defendants do not have any money that belongs to Plaintiff in equity or good conscience;

25. Plaintiff did not rely on promises made by Defendant to Plaintiff's detriment;

26. Defendants did not supply false information for the guidance of Plaintiff or Plaintiff's associates;

27. Plaintiff did not suffer pecuniary loss that was proximately caused by Plaintiff's justifiable reliance on information obtained by Defendants;

28. Defendants did not wrongfully receive Plaintiff's money;

29. Defendants did not make material false representations to Plaintiff with the knowledge of their falsity or with reckless disregard of the truth with the intention that such representations be acted upon by Plaintiff;

30. Defendants did not breach a special trust, fiduciary relationship, or commit fraud;

31. Defendants were not enriched by any transaction between Defendants and Plaintiff;

32. Plaintiff did not make valuable and permanent improvements upon the land with the consent of Defendant;

33. Plaintiff did not pay consideration for the property at issue;

34. Plaintiff did not commit false, misleading, or deceptive acts;

35. Plaintiff did not make false representations or false promises; and

36. Defendants did not rely on promises made by Plaintiff to Defendants' detriment.

## CONCLUSIONS OF LAW

After hearing the testimony, arguments of counsel and considering the evidence presented and the pleadings on file, the Court made the following conclusions of law:

1. There was not a valid, enforceable contract between the parties;

2. There was not a contract for deed created;

3. Defendants Vincent Ali a/k/a James Vincent Houston and Martha Ali a/k/a Martha Houston are the legal owners of the property located at 558 Hawthorne Road, New Waverly, Texas 77358;

4. Plaintiff Terry T. Blevins does not have right, title, or interest in the property located at 558 Hawthorne Road, New Waverly, Texas 77358;

5. Defendants Vincent Ali a/k/a James Vincent Houston and Martha Ali a/k/a Martha Houston, as the legal owners of the property located at 558 Hawthorne Road, New Waverly, Texas 77358, are entitled to use and enjoyment of the property;

6. Monies expended by Plaintiff Terry T. Blevins are applied as reasonable rental for the use of the property;

7. Plaintiff is required to vacate the subject premises;

8. Defendants did not violate the Texas Deceptive Trade Practices Act;

9. Plaintiff did not sustain damages that are recoverable pursuant to the Texas Deceptive Trade Practices Act or any other cause of action;

10. Defendants did not commit fraud by non-disclosure;

11. Defendants did not commit statutory fraud in real estate;

12. Defendants did not make negligent misrepresentations;

13. Defendants did not wrongfully receive Plaintiffs' money;

14. Defendants are not required to deliver any real estate to Plaintiff;

15. Defendants did not commit fraud against Plaintiff;

16. Defendants were not unjustly enriched;

17. Because there was no valid contract, Defendants are not required to specifically perform;

18. Plaintiff is not entitled to receive the property at issue based on promissory estoppel;

19. Plaintiff is not entitled to a permanent injunction;

20. Plaintiff is not entitled to exemplary damages of any kind;

21. Plaintiff did not commit fraud;

22. Plaintiff did not make negligent misrepresentations;

23. Plaintiff did not violate the Texas Deceptive Trade Practices Act;

24. Defendants are not entitled to recover damages based on promissory estoppel;

25. Plaintiff would be unjustly enriched if he were allowed to occupy and use the property at issue from September 2013 to May 2015 without any payments; therefore, the money paid by Plaintiff to Defendant is to be applied for the reasonable rental value of the property; and

26. Each of the parties shall bear their own court costs and attorneys fees.

SIGNED ON _6 August_____, 2015

_____
JUDGE PRESIDING

# TAB NO. 3



**Donald L. Kraemer**
12th Judicial District Judge

**Jacqueline Mills**
Court Reporter

**Carroll Standley**
Court Administrator

**Becky West**
Court Coordinator

## 12TH JUDICIAL DISTRICT COURT
Grimes, Madison and Walker Counties
1100 University Avenue, Suite 303
Huntsville, Texas 77340
(936) 436-4915
(936) 435-8025 Fax

May 21, 2015

To: Michael Boltz
Attorney at Law
Fax: 832-218-2400

Jacob Paschal
Attorney at Law
Fax: 936-295-3174

RE: Cause #27,232, Terry Blevins vs Vincent Ali, et al, Walker County 12th Judicial District

Gentlemen,

After considering the evidence presented in the bench trial on May 6, 2015 in the above styled cause, the court is making the following decision:

1. The court finds there was not a contract- no meeting of the minds.

2. The Plaintiff is to vacate the property on or before July 1, 2015.

3. Monies expended by the Plaintiff are applied as reasonable rental for the use of the property and

4. Each party is to pay their own attorney fees (perhaps the next time they will seek the advice of an attorney before they attempt to enter into a transaction to buy or sell real property).

I am assigning the drafting of a judgment to be presented to the court to Mr. Paschal.

Sincerely,

Donald L. Kraemer

**FILED**
TIME 11am
21 DAY OF May 2015
ROBYN FLOWERS
District Clerk, Walker County
By _____ Deputy

**COPY**

faxed to both attys
5/21/15 @ 9:21am  TW

TAB NO. 4

Vernon's Texas Statutes and Codes Annotated
   Business and Commerce Code (Refs & Annos)
     Title 3. Insolvency, Fraudulent Transfers, and Fraud
      Chapter 27. Fraud

V.T.C.A., Bus. & C. § 27.01

§ 27.01. Fraud in Real Estate and Stock Transactions

Currentness

(a) Fraud in a transaction involving real estate or stock in a corporation or joint stock company consists of a

  (1) false representation of a past or existing material fact, when the false representation is

    (A) made to a person for the purpose of inducing that person to enter into a contract; and

    (B) relied on by that person in entering into that contract; or

  (2) false promise to do an act, when the false promise is

    (A) material;

    (B) made with the intention of not fulfilling it;

    (C) made to a person for the purpose of inducing that person to enter into a contract; and

    (D) relied on by that person in entering into that contract.

(b) A person who makes a false representation or false promise commits the fraud described in Subsection (a) of this section and is liable to the person defrauded for actual damages.

(c) A person who makes a false representation or false promise with actual awareness of the falsity thereof commits the fraud described in Subsection (a) of this section and is liable to the person defrauded for exemplary damages. Actual awareness may be inferred where objective manifestations indicate that a person acted with actual awareness.

(d) A person who (1) has actual awareness of the falsity of a representation or promise made by another person and (2) fails to disclose the falsity of the representation or promise to the person defrauded, and (3) benefits from the false representation or promise commits the fraud described in Subsection (a) of this section and is liable to the person defrauded for exemplary damages. Actual awareness may be inferred where objective manifestations indicate that a person acted with actual awareness.

(e) Any person who violates the provisions of this section shall be liable to the person defrauded for reasonable and necessary attorney's fees, expert witness fees, costs for copies of depositions, and costs of court.

**Credits**

Acts 1967, 60th Leg., vol. 2, p. 2343, ch. 785, § 1. Amended by Acts 1983, 68th Leg., p. 5208, ch. 949, §§ 1, 2, eff. Sept. 1, 1983.

V. T. C. A., Bus. & C. § 27.01, TX BUS & COM § 27.01
Current through the end of the 2015 Regular Session of the 84th Legislature

---

**End of Document** © 2015 Thomson Reuters. No claim to original U.S. Government Works.

# TAB NO. 5

Vernon's Texas Statutes and Codes Annotated
  Business and Commerce Code (Refs & Annos)
    Title 2. Competition and Trade Practices
      Chapter 17. Deceptive Trade Practices (Refs & Annos)
        Subchapter E. Deceptive Trade Practices and Consumer Protection (Refs & Annos)

V.T.C.A., Bus. & C. § 17.46

§ 17.46. Deceptive Trade Practices Unlawful

Effective: September 1, 2015
Currentness

(a) False, misleading, or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful and are subject to action by the consumer protection division under Sections 17.47, 17.58, 17.60, and 17.61 of this code.

(b) Except as provided in Subsection (d) of this section, the term "false, misleading, or deceptive acts or practices" includes, but is not limited to, the following acts:

(1) passing off goods or services as those of another;

(2) causing confusion or misunderstanding as to the source, sponsorship, approval, or certification of goods or services;

(3) causing confusion or misunderstanding as to affiliation, connection, or association with, or certification by, another;

(4) using deceptive representations or designations of geographic origin in connection with goods or services;

(5) representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have or that a person has a sponsorship, approval, status, affiliation, or connection which the person does not;

(6) representing that goods are original or new if they are deteriorated, reconditioned, reclaimed, used, or secondhand;

(7) representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another;

(8) disparaging the goods, services, or business of another by false or misleading representation of facts;

(9) advertising goods or services with intent not to sell them as advertised;

(10) advertising goods or services with intent not to supply a reasonable expectable public demand, unless the advertisements disclosed a limitation of quantity;

(11) making false or misleading statements of fact concerning the reasons for, existence of, or amount of price reductions;

(12) representing that an agreement confers or involves rights, remedies, or obligations which it does not have or involve, or which are prohibited by law;

(13) knowingly making false or misleading statements of fact concerning the need for parts, replacement, or repair service;

(14) misrepresenting the authority of a salesman, representative or agent to negotiate the final terms of a consumer transaction;

(15) basing a charge for the repair of any item in whole or in part on a guaranty or warranty instead of on the value of the actual repairs made or work to be performed on the item without stating separately the charges for the work and the charge for the warranty or guaranty, if any;

(16) disconnecting, turning back, or resetting the odometer of any motor vehicle so as to reduce the number of miles indicated on the odometer gauge;

(17) advertising of any sale by fraudulently representing that a person is going out of business;

(18) advertising, selling, or distributing a card which purports to be a prescription drug identification card issued under Section 4151.152, Insurance Code, in accordance with rules adopted by the commissioner of insurance, which offers a discount on the purchase of health care goods or services from a third party provider, and which is not evidence of insurance coverage, unless:

(A) the discount is authorized under an agreement between the seller of the card and the provider of those goods and services or the discount or card is offered to members of the seller;

(B) the seller does not represent that the card provides insurance coverage of any kind; and

(C) the discount is not false, misleading, or deceptive;

(19) using or employing a chain referral sales plan in connection with the sale or offer to sell of goods, merchandise, or anything of value, which uses the sales technique, plan, arrangement, or agreement in which the buyer or prospective buyer is offered the opportunity to purchase merchandise or goods and in connection with the purchase receives the seller's promise or representation that the buyer shall have the right to receive compensation or consideration in any form for furnishing to the seller the names of other prospective buyers if receipt of the compensation or consideration is contingent upon the occurrence of an event subsequent to the time the buyer purchases the merchandise or goods;

(20) representing that a guaranty or warranty confers or involves rights or remedies which it does not have or involve, provided, however, that nothing in this subchapter shall be construed to expand the implied warranty of merchantability as defined in Sections 2.314 through 2.318 and Sections 2A.212 through 2A.216 to involve obligations in excess of those which are appropriate to the goods;

(21) promoting a pyramid promotional scheme, as defined by Section 17.461;

(22) representing that work or services have been performed on, or parts replaced in, goods when the work or services were not performed or the parts replaced;

(23) filing suit founded upon a written contractual obligation of and signed by the defendant to pay money arising out of or based on a consumer transaction for goods, services, loans, or extensions of credit intended primarily for personal, family, household, or agricultural use in any county other than in the county in which the defendant resides at the time of the commencement of the action or in the county in which the defendant in fact signed the contract; provided, however, that a violation of this subsection shall not occur where it is shown by the person filing such suit that the person neither knew or had reason to know that the county in which such suit was filed was neither the county in which the defendant resides at the commencement of the suit nor the county in which the defendant in fact signed the contract;

(24) failing to disclose information concerning goods or services which was known at the time of the transaction if such failure to disclose such information was intended to induce the consumer into a transaction into which the consumer would not have entered had the information been disclosed;

(25) using the term "corporation," "incorporated," or an abbreviation of either of those terms in the name of a business entity that is not incorporated under the laws of this state or another jurisdiction;

(26) selling, offering to sell, or illegally promoting an annuity contract under Chapter 22, Acts of the 57th Legislature, 3rd Called Session, 1962 (Article 6228a-5, Vernon's Texas Civil Statutes), with the intent that the annuity contract will be the subject of a salary reduction agreement, as defined by that Act, if the annuity contract is not an eligible qualified investment under that Act or is not registered with the Teacher Retirement System of Texas as required by Section 8A of that Act;

(27) taking advantage of a disaster declared by the governor under Chapter 418, Government Code, by:

(A) selling or leasing fuel, food, medicine, or another necessity at an exorbitant or excessive price; or

(B) demanding an exorbitant or excessive price in connection with the sale or lease of fuel, food, medicine, or another necessity;

<Text of (b)(28), as added by Acts 2015, 84th Leg., ch. 1023 (H.B. 1265), § 1>

(28) delivering or distributing a solicitation in connection with a good or service that:

(A) represents that the solicitation is sent on behalf of a governmental entity when it is not; or

(B) resembles a governmental notice or form that represents or implies that a criminal penalty may be imposed if the recipient does not remit payment for the good or service;

<Text of (b)(28), as added by Acts 2015, 84th Leg., ch. 1080 (H.B. 2573), § 1>

(28) using the translation into a foreign language of a title or other word, including "attorney," "lawyer," "licensed," "notary," and "notary public," in any written or electronic material, including an advertisement, a business card, a letterhead, stationery, a website, or an online video, in reference to a person who is not an attorney in order to imply that the person is authorized to practice law in the United States.

(29) delivering or distributing a solicitation in connection with a good or service that resembles a check or other negotiable instrument or invoice, unless the portion of the solicitation that resembles a check or other negotiable instrument or invoice includes the following notice, clearly and conspicuously printed in at least 18-point type:

"SPECIMEN-NON-NEGOTIABLE";

(30) in the production, sale, distribution, or promotion of a synthetic substance that produces and is intended to produce an effect when consumed or ingested similar to, or in excess of, the effect of a controlled substance or controlled substance analogue, as those terms are defined by Section 481.002, Health and Safety Code:

(A) making a deceptive representation or designation about the synthetic substance; or

(B) causing confusion or misunderstanding as to the effects the synthetic substance causes when consumed or ingested; or

(31) a licensed public insurance adjuster directly or indirectly soliciting employment, as defined by Section 38.01, Penal Code, for an attorney, or a licensed public insurance adjuster entering into a contract with an insured for the primary purpose of referring the insured to an attorney without the intent to actually perform the services customarily provided by a licensed public insurance adjuster, provided that this subdivision may not be construed to prohibit a licensed public insurance adjuster from recommending a particular attorney to an insured.

(c)(1) It is the intent of the legislature that in construing Subsection (a) of this section in suits brought under Section 17.47 of this subchapter the courts to the extent possible will be guided by Subsection (b) of this section and the interpretations given by the Federal Trade Commission and federal courts to Section 5(a)(1) of the Federal Trade Commission Act [15 U.S.C.A. § 45(a)(1)].

(2) In construing this subchapter the court shall not be prohibited from considering relevant and pertinent decisions of courts in other jurisdictions.

(d) For the purposes of the relief authorized in Subdivision (1) of Subsection (a) of Section 17.50 of this subchapter, the term "false, misleading, or deceptive acts or practices" is limited to the acts enumerated in specific subdivisions of Subsection (b) of this section.

**Credits**

Added by Acts 1973, 63rd Leg., p. 322, ch. 143, § 1, eff. May 21, 1973. Amended by Acts 1977, 65th Leg., p. 601, ch. 216, §§ 2, 3, eff. May 23, 1977; Acts 1977, 65th Leg., p. 892, ch. 336, § 1, eff. Aug. 29, 1977; Acts 1979, 66th Leg., p. 1327, ch. 603, § 3, eff. Aug. 27, 1979; Acts 1987, 70th Leg., ch. 280, § 1, eff. Sept. 1, 1987; Acts 1993, 73rd Leg., ch. 570, § 6, eff. Sept. 1, 1993; Acts 1995, 74th Leg., ch. 414, § 3, eff. Sept. 1, 1995; Acts 1995, 74th Leg., ch. 463, § 1, eff. Sept. 1, 1995; Acts 2001, 77th Leg., ch. 962, § 1, eff. Sept. 1, 2001; Acts 2001, 77th Leg., ch. 1229, § 27, eff. June 1, 2002; Acts 2003, 78th Leg., ch. 1276, § 4.001(a), eff. Sept. 1, 2003; Acts 2005, 79th Leg., ch. 728, § 11.101, eff. Sept. 1, 2005; Acts 2007, 80th Leg., ch. 1230, § 26, eff. Sept. 1, 2007; Acts 2015, 84th Leg., ch. 1023 (H.B. 1265), § 1, eff. Sept. 1, 2015; Acts 2015, 84th Leg., ch. 1080 (H.B. 2573), § 1, eff. Sept. 1, 2015.

V. T. C. A., Bus. & C. § 17.46, TX BUS & COM § 17.46
Current through the end of the 2015 Regular Session of the 84th Legislature

---

**End of Document**

© 2015 Thomson Reuters. No claim to original U.S. Government Works.

# TAB NO. 6

Vernon's Texas Statutes and Codes Annotated
　Business and Commerce Code (Refs & Annos)
　　Title 2. Competition and Trade Practices
　　　Chapter 17. Deceptive Trade Practices (Refs & Annos)
　　　　Subchapter E. Deceptive Trade Practices and Consumer Protection (Refs & Annos)

V.T.C.A., Bus. & C. § 17.50

§ 17.50. Relief for Consumers

Effective: September 1, 2005
Currentness

(a) A consumer may maintain an action where any of the following constitute a producing cause of economic damages or damages for mental anguish:

(1) the use or employment by any person of a false, misleading, or deceptive act or practice that is:

(A) specifically enumerated in a subdivision of Subsection (b) of Section 17.46 of this subchapter; and

(B) relied on by a consumer to the consumer's detriment;

(2) breach of an express or implied warranty;

(3) any unconscionable action or course of action by any person; or

(4) the use or employment by any person of an act or practice in violation of Chapter 541, Insurance Code.

(b) In a suit filed under this section, each consumer who prevails may obtain:

(1) the amount of economic damages found by the trier of fact. If the trier of fact finds that the conduct of the defendant was committed knowingly, the consumer may also recover damages for mental anguish, as found by the trier of fact, and the trier of fact may award not more than three times the amount of economic damages; or if the trier of fact finds the conduct was committed intentionally, the consumer may recover damages for mental anguish, as found by the trier of fact, and the trier of fact may award not more than three times the amount of damages for mental anguish and economic damages;

(2) an order enjoining such acts or failure to act;

(3) orders necessary to restore to any party to the suit any money or property, real or personal, which may have been acquired in violation of this subchapter; and

(4) any other relief which the court deems proper, including the appointment of a receiver or the revocation of a license or certificate authorizing a person to engage in business in this state if the judgment has not been satisfied within three months of the date of the final judgment. The court may not revoke or suspend a license to do business in this state or appoint a receiver to take over the affairs of a person who has failed to satisfy a judgment if the person is a licensee of or regulated by a state agency which has statutory authority to revoke or suspend a license or to appoint a receiver or trustee. Costs and fees of such receivership or other relief shall be assessed against the defendant.

(c) On a finding by the court that an action under this section was groundless in fact or law or brought in bad faith, or brought for the purpose of harassment, the court shall award to the defendant reasonable and necessary attorneys' fees and court costs.

(d) Each consumer who prevails shall be awarded court costs and reasonable and necessary attorneys' fees.

(e) In computing additional damages under Subsection (b), attorneys' fees, costs, and prejudgment interest may not be considered.

(f) A court may not award prejudgment interest applicable to:

(1) damages for future loss under this subchapter; or

(2) additional damages under Subsection (b).

(g) Chapter 41, Civil Practice and Remedies Code, does not apply to a cause of action brought under this subchapter.

(h) Notwithstanding any other provision of this subchapter, if a claimant is granted the right to bring a cause of action under this subchapter by another law, the claimant is not limited to recovery of economic damages only, but may recover any actual damages incurred by the claimant, without regard to whether the conduct of the defendant was committed intentionally. For the purpose of the recovery of damages for a cause of action described by this subsection only, a reference in this subchapter to economic damages means actual damages. In applying Subsection (b)(1) to an award of damages under this subsection, the trier of fact is authorized to award a total of not more than three times actual damages, in accordance with that subsection.

**Credits**
Added by Acts 1973, 63rd Leg., p. 322, ch. 143, § 1, eff. May 21, 1973. Amended by Acts 1977, 65th Leg., p. 603, ch. 216, § 5, eff. May 23, 1977; Acts 1979, 66th Leg., p. 1329, ch. 603, § 4, eff. Aug. 27, 1979; Acts 1989, 71st Leg., ch. 380, § 2, eff. Sept. 1, 1989; Acts 1995, 74th Leg., ch. 414, § 5, eff. Sept. 1, 1995; Acts 2005, 79th Leg., ch. 728, § 11.102, eff. Sept. 1, 2005.

V. T. C. A., Bus. & C. § 17.50, TX BUS & COM § 17.50
Current through the end of the 2015 Regular Session of the 84th Legislature

**End of Document**                                         © 2015 Thomson Reuters. No claim to original U.S. Government Works.

# TAB NO. 7

| | | |
|---|---|---|
| TERRY T. BLEVINS | § | IN THE DISTRICT COURT |
|     Plaintiff/Counter Defendant; | § | |
| | § | |
| v. | § | |
| | § | 12ᵗʰ JUDICIAL DISTRICT |
| VINCENT ALI A/K/A | § | |
| JAMES VINCENT HOUSTON | § | |
| AND MARTHA HOUSTON | § | |
|     Defendants/Counter Plaintiff. | § | WALKER COUNTY, TEXAS |

## PLAINTIFF/COUNTER DEFENDANT'S REQUEST FOR FINDINGS OF FACT & CONCLUSIONS OF LAW

Plaintiff/Counter Defendant, Terry T. Blevins, asks the Court to file findings of fact and conclusions of law.

### INTRODUCTION

1.     Plaintiff, Terry T. Blevins, sued Defendants, Vincent Ali a/k/a James Vincent Houston and Martha Houston, for deceptive trade practices, fraud by non-disclosure, statutory fraud in real estate, negligent misrepresentation, declaratory judgment, common law fraud, common law misrepresentation, breach of contract, unjust enrichment, constructive trust, money had and received, specific performance, promissory estoppel, application for temporary restraining order, request for temporary injunction and request for permanent injunction.

2.     Defendants responded filing a counterclaim against Plaintiff for breach of contract, violations of the Texas deceptive trade practices act, fraud, negligent misrepresentation, promissory estoppel, unjust enrichment and declaratory judgment.

3.     The Court signed a judgment on June 12, 2015.

### REQUEST

4.     Plaintiff asks the Court to file findings of fact and conclusions of law and require the court clerk to mail copies to all parties, as required by Texas Rule of Civil Procedure 297.

5.     Plaintiff files this request within 20 days after the Court signed the judgment. Tex. R. Civ. P. 296.

Filed: 6/26/2015 1:19:17 PM
Robyn M. Flowers
District Clerk
Walker County, Texas
Brandy Roberson

14-114 Plaintiff's Request for Findings of Fact and Conclusions of Law     Page 1 of 2

165

Respectfully submitted,

Boltz Law

By:
Michael Boltz    Texas Bar No. 02580300
1400 Woodloch Forest Drive,    Suite 540
The Woodlands,    Texas 77380
Tel. (832) 381-3070    Fax. (832) 218-2400
Email:    boltz@boltzlaw.com
Attorney for    Plaintiff/Counter Defendant


Law Office of Mynde S. Eisen, P.C.


By:   /S/ Mynde S. Eisen, with permission
Mynde S. Eisen    Texas Bar No. 06503950
P.O. Box 630749    Houston, Texas 77263
Tel. (713) 266-2955    Fax. (281) 343-1089
Email:    wyndeeisen@sbcglobal.net
Attorney for    Plaintiff/Counter Defendant

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing instrument has been served upon all pro se parties and counsel of record pursuant to Rule 21a, T.R.C.P. on June 26, 2015.

Michael Boltz

| TERRY T. BLEVINS | § | IN THE DISTRICT COURT |
| Plaintiff/Counter Defendant; | § | |
| | § | |
| v. | § | |
| | § | 12th JUDICIAL DISTRICT |
| VINCENT ALI A/K/A | § | |
| JAMES VINCENT HOUSTON | § | |
| AND MARTHA HOUSTON | § | |
| Defendants/Counter Plaintiff. | § | WALKER COUNTY, TEXAS |

## PLAINTIFF TERRY T. BLEVINS' MOTION FOR NEW TRIAL

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, Plaintiff, **TERRY T. BLEVINS** ("Blevins" or "Plaintiff"), and asks the Court to grant a new trial in the interest of justice and fairness and in support thereof, Plaintiff respectfully shows the Court as follows:

### BACKGROUND

1. On or about December 3, 2014, Plaintiff brought suit against the Defendants Vincent Ali, a/k/a James Vincent Houston and Martha Houston (hereinafter "Defendants"), for deceptive trade practices, fraud by non-disclosure, statutory fraud in real estate, negligent misrepresentation, declaratory judgment, common law fraud, common law misrepresentation, breach of contract, unjust enrichment, constructive trust, money had and received, specific performance, promissory estoppel, application for temporary restraining order, request for temporary injunction and request for permanent injunction.

2. The suit stemmed from Defendants' misrepresentations about their ownership in two tracts of real property located in Walker County, Texas, and from fraud committed by the

Filed: 7/1/2015 4:27:33 PM
Robyn M. Flowers
District Clerk
Walker County, Texas
Brandy Roberson

Defendants in inducing Plaintiff to tender payments for the purchase of the property to which Defendants did not have proper title. Plaintiff had tendered payments of approximately $47,500.00 towards the purchase of the property prior to learning that Defendants not only lacked proper title, but were aware they did not have proper title to convey the property they were allegedly selling to Plaintiff.

3. On May 6, 2015, the case was presented to the Court. On May 21, 2015, the Judge rendered his decision (the "Court's Verdict") finding in favor of the Defendants Vincent Ali, a/k/a James Vincent Houston and Martha Houston. On June 12, 2015, the Court signed a Final Judgment. The Final Judgment was submitted and signed without providing notice to Plaintiff. Therefore, Plaintiff did not have the opportunity to object to the form of the Judgment that was filed. The Final Judgment entered judgment in favor of the Defendants and contained rulings that were beyond the findings of the Court in the May 12, 2015 letter send by the Judge.

### CHALLENGING THE FINDINGS AND CONCLUSIONS

4. The Court should grant a new trial because it erred by making the following rulings.

5. The Court erred by ruling that "there was no contract between Plaintiff and Defendants because there was no meeting of the minds". This finding is against the great weight and preponderance of the evidence and is manifestly unjust. Defendants in their own counter-claim filed on December 29, 2014, admitted that they entered into an agreement to sell property to Plaintiff. At trial, Plaintiff presented and admitted into evidence a videotape in which Defendant Vincent Ali, a/k/a James Vincent Houston made specific representations about the property he claimed he owned and the property Plaintiff would be purchasing from him. Plaintiff made payments to Defendants totaling approximately $47,500.00 for the purchase of the Property pursuant to and as admitted by the Defendants pursuant to their agreement. Plaintiff provided

uncontroverted testimony that the payments he made were for the purchase of the property. Defendants even delivered three (3) deeds to Plaintiff in pursuit of Defendants' fraudulent transaction.

6. Additionally, on March 7, 2014, Defendants, through their counsel of record, prepared and provided to the Walker County Title Company certain real estate documents, including, but not limited to a Deed of Trust, General Warranty Deed with Vendor's Lien and a Promissory Note with respect to the two tracts of land which Plaintiff was purchasing. Correspondence from Defendant's counsel, admitted into evidence as Plaintiff's Exhibit 6, identified Plaintiff as the Buyer and Defendants as the Sellers. The documents identified the purchase price, that the transaction was owner financed, and that the Buyer had already paid the $30,000.00 as a down payment. The letter also represented that the property was being sold "as is". Plaintiff testified that after title was "opened", he repeatedly requested a closing date from Defendants, unaware that Defendants could not convey good title.

7. After Defendants did not provide a reasonable explanation for not closing the transaction, Plaintiff conducted his own investigation and learned that Defendants did not have proper title, and were aware of the fact that they did not have title at least as early as March 24, 2014. Defendants intentionally did not disclose this fact to the Plaintiff in order to induce him to continue paying the "note payments" under the admitted terms of the Promissory Note presented to the title company on March 8, 2014

8. Plaintiff, unaware of the misrepresentations by Defendant, continued making payments to the Defendants with the understanding that the payments were towards the purchase of the property pursuant to their acknowledged agreement.

---

14-114 Plaintiff's Motion for New Trial

9. The evidence presented in the case overwhelmingly showed that there was a contract between the parties and that Defendants fraudulently induced Plaintiff into such oral contract.

10. The court also erred in finding in the Final Judgment that "Defendants Vincent Ali a/k/a James Vincent Houston and Martha Ali, a/k/a Martha Houston were the legal owners of the property located at 558 Hawthorne Road, New Waverly, Texas 77358." This finding which was included in the Final Judgment was not part of the Court's Verdict; therefore it exceeded the scope and actual findings made by the Court. The Court's Verdict provided no indication as to the basis for the determination of the legal owners of 558 Hawthorne Road. Rather, evidence presented at trial indicated that Defendant did not have good title to the two tracts of land Plaintiff contracted to purchase. Attorney and title examiner, Lloyd Martin, of Walker County Title Company, testified that the title was so clouded that title could not be insured and refused to close on the title represented by Defendants. Therefore, the Court's inclusion of this finding in the Final Judgment is err. When a case is resolved by a fact-finder, the judgment must conform to the pleadings and proof. Tex. R. Civ. P. 301. *Latch v. Gratty, Inc.*, 107 S.W.3d 543, 546 (Tex. 2003). The Judgment herein did not conform to the proof presented.

11. The court further erred in the Final Judgment that "Defendants Vincent Ali a/k/a James Vincent Houston and Martha Ali, a/k/a Martha Houston as the legal owners of the property located at 558 Hawthorne Road, New Waverly, Texas 77358, are entitled to use, possession and enjoyment of the property and are also entitled to sell the property." This finding, although included in the Final Judgment, was not part of the Court's Verdict. Again, this finding exceeds the scope of the actual Verdict by the Court and was err. The Judgment did not conform to the proof presented. Tex. R. Civ. P. 301; *Latch*, 107 S.W.3d at 546.

12. The Court erred in ruling that the "monies expended by Plaintiff Terry T. Blevins were applied as reasonable rental for the use of the property" rather than finding that they were payments for the purchase of the Property. No evidence was presented to support this finding that the monies Plaintiff paid were for rent rather than for purchase. There was no equitable basis, in law, facts or pleadings to support this finding, ruling or Judgment. Defendants admitted that the sums tendered were payment towards the purchase of the property. Plaintiff further testified that he delivered the payments to purchase the Property with the agreement that Defendants could convey the Property to Plaintiff.

13. The Court erred in ruling "Plaintiff Terry T. Blevins is ORDERED to vacate the property located at 588 Hawthorne Road, New Waverly, Texas 77358 on or before July 1, 2015." As articulated above, Defendants failed to provide evidence sufficient to support any findings that Defendants were the legal owners of the property located at 558 Hawthorne Road, New Waverly, Texas 77358, and were entitled to immediate possession. To the contrary, the evidence supports Plaintiff's right to possession and ownership and was ready, willing and able to perform and was performing the sale. The overwhelming evidence presented was that Plaintiff tendered payment for the purchase of the Property, but was not provided title as agreed.

14. The Final Judgment was entered on June 12, 2015. A judgment becomes final for purposes of changing it when the trial court loses plenary power. Tex. R. Civ. P. 306a(1). If not post-judgment motions are filed, the trial court loses plenary power and the judgment becomes final 30 days after it was signed. *Lane Bank Equip. Co., v. Smith S. Equip., Inc.*, 10 S.W.3d 308, 310 (Tex. 2000). In this case, Plaintiff would be forced to vacate on July 1, 2015, or less than 30 days after Judgment and prior to expiration of Plaintiff's right to challenge the Judgment. No

writ can issue until at least thirty days after the entry of the Judgment if no appeal is taken or a longer period because the New Trial extends this time period.

15. The Court erred by failing to file formal findings of fact and conclusions of law because Plaintiff cannot ascertain the facts and grounds on which the Court based its judgment. The Court made conclusory statements about ownership of the property and the lack of an agreement between the parties without providing adequate factual basis or support. There is no indication of what evidence or testimony the court relied upon or found credible. There is no indication of any weight given by the court to any testimony or evidence. When a party timely requests finding of fact and conclusions of law and the Court does not file them, the failure is presumed harmful on appeal unless the record affirmatively shows that the party suffered no injury. *Tenery v. Tenery*, 932 S.W.2d 29, 30 (Tex. 1996).

WHEREFORE, PREMISES CONSIDERED, Plaintiff Terry T. Blevins respectfully requests that this Court grant a new trial in the interest of justice and fairness and for such other and further relief to which it may be entitled.

Respectfully submitted,

BOLTZ LAW

By:

Michael Boltz
State Bar No.   05280300
1400 Woodloch Forest Drive, Suite 540
The Woodlands, Texas 77380
(832) 381-3079
(832) 218-2400 (fax)
email: boltz@boltzlaw.com

LAW OFFICE OF MYNDE S. EISEN, P.C.

By: /s/ Mynde S. Eisen
   Mynde S. Eisen
   State Bar No. 06503950
   P.O. Box 630749
   Houston, Texas  77263
   (713) 266-2955
   (713) 266-3008 (telecopier)
   Email: wyndeeisen@sbcglobal.net

ATTORNEYS FOR PLAINTIFF
TERRY T. BLEVINS

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing Motion for New Trial has been served on all parties in interest as listed below by depositing the same in the U.S. mail, regular mail, postage prepaid, electronic filing and/or facsimile on this 1st day of July, 2015.

Michael Boltz

P. Jacob Paschal
Haney, Moorman, Paschal, P.C.
1300 Eleventh Street, Suite 405
Huntsville, Texas 77340

TAB NO. 8

| | | |
|---|---|---|
| TERRY T. BLEVINS | § | IN THE DISTRICT COURT |
|     Plaintiff/Counter Defendant; | § | |
| | § | |
| v. | § | |
| | § | |
| | § | 12th JUDICIAL DISTRICT |

| | | |
|---|---|---|
| TERRY T. BLEVINS<br>    Plaintiff/Counter Defendant; | §<br>§<br>§ | IN THE DISTRICT COURT |
| v. | §<br>§ | 12th JUDICIAL DISTRICT |
| VINCENT ALI A/K/A<br>JAMES VINCENT HOUSTON<br>AND MARTHA HOUSTON<br>    Defendants/Counter Plaintiff. | §<br>§<br>§<br>§ | WALKER COUNTY, TEXAS |

## PLAINTIFF/COUNTER DEFENDANT'S OBJECTION TO THE COURT'S RESTAED FINDINGS AND REQUEST FOR ADDITIONAL FINDINGS OF FACT & CONCLUSIONS OF LAW

Plaintiff/Counter Defendant, Terry T. Blevins, ("Blevins") asks the Court to file additional Findings of Fact and Conclusions of Law.

### INTRODUCTION

1.    Plaintiff, Terry T. Blevins, ("Blevins") sued Defendants, Vincent Ali a/k/a James Vincent Houston and Martha Houston (collectively referred to as "Ali"), for deceptive trade practices, fraud by non-disclosure, statutory fraud in real estate, negligent misrepresentation, declaratory judgment, common law fraud, common law misrepresentation, breach of contract, unjust enrichment, constructive trust, money had and received, specific performance, promissory estoppel, application for temporary restraining order, request for temporary injunction and request for permanent injunction.

Filed: 8/14/2015 4:07:49 PM
Robyn M. Flowers
District Clerk
Walker County, Texas
Melissa Fuentes

2. Defendants responded filing a counterclaim against Plaintiff for breach of contract, violations of the Texas deceptive trade practices act, fraud, negligent misrepresentation, promissory estoppel, unjust enrichment and declaratory judgment.

3. Plaintiff/Counter Defendant Answered Defendants' counterclaim and requested recovery of Plaintiff/Counter Defendant's attorney's fees under DTPA §17.50(c) and TRCP Rule 13 because Defendant/Counter Plaintiff was not a consumer and Plaintiff/Counter Defendant was not a merchant, so Defendant/Counter Plaintiff 's counterclaim under the Deceptive Trade Practice Action was groundless and in bad faith.

4. The Court signed a judgment on June 12, 2015

5. Plaintiff/Counter Defendant filed Plaintiff's First Request For Findings of Fact and Conclusions of Law on Filed June 26, 2015. The Findings of Fact and Conclusions of Law were due on July 16, 2015. No Findings of Fact and Conclusions of Law were filed.

6. Plaintiff/Counter Defendant's Second Request For Findings of Fact and Conclusions of Law on July 17, 2015. No Findings of Fact and Conclusions of Law were filed on July 27, 2015.

7. Plaintiff/Counter Defendant had no notice that the Court filed its Findings of Fact and Conclusions of Law until he was served with the Court's Findings of Fact and Conclusions of Law on August 10, 2015 by regular mail, even though the Findings of Fact and Conclusions of Law were filed by the Court on August 4, 2015.

## OBJECTIONS TO RESTATED FINDINGS

8.     The Court's Findings of Fact and Conclusions of Law contain findings that were in the Final Judgment, which are prohibited by Tex. R. of Civ. Proc. Rule 299a. The repeated findings are "There was no contract between Plaintiff and Defendants because there was not a meeting of the minds."

## REQUEST FOR ADDITIONAL FINDINGS

9.     Plaintiff/Counter Defendant makes this request within ten days after the Court filed the Findings and Conclusions. Tex. R. Civ. P. 298.

10.     Plaintiff/Counter Defendant asks the Court to make an additional Finding of Fact and Conclusion of Law. The proposed Finding of Fact and Conclusion of Law concern controlling issues because they show that: (1) there was a meeting of minds between the parties and that an enforceable contract was formed (2) Ali committed deceptive trade practices, (3) Ali committed fraud by non-disclosure, (4) Ali committed statutory fraud in real estate, (5) Ali committed negligent misrepresentation, (6) the subject real estate should be granted to Blevins under declaratory judgment, (7) Ali committed common law fraud, (8) Ali committed common law misrepresentation, (9) Blevins is entitled to recover under breach of contract, (10) Blevins is entitled to recover under unjust enrichment, (11) Blevins is entitled to recover under constructive trust, (12) Blevins is entitled to recover under money had and received, (13) Blevins is entitled to recover under specific performance, (14) Blevins is entitled to recover under promissory estoppel and (15) that Blevins is entitled to recover his attorney's fees based on Ali's counterclaim for DTPA under DTPA §17.50(c) and TRCP Rule 13 because Defendant/Counter Plaintiff filed a counterclaim asserting that were entitled to recover under the DTPA when they knew that they

were the sellers of subject real property and therefore not consumers and that Plaintiff/Counter Defendant was not a merchant.

## CONCLUSION

11.    Plaintiff/Counter Defendant makes this request because material, disputed issues arose during the trial that was not in the Court's the Findings of Fact. Although the Honorable Court does not agree with these requested additional Findings of Fact and Defendant/Counter Plaintiff has made no Request for Findings of Fact, the request is necessary so Blevins may challenge the lack of these findings on appeal if the Court does not make a Finding.

## PRAYER

12.    Plaintiff/Counter Defendant attaches Plaintiff/Counter Defendant's additional requested filings of fact and conclusions of law to this request and asks that the Court file them on or before August 24, 2015, ten days from the date of this request.

Respectfully submitted,

Boltz Law

By:
Michael Boltz     Texas Bar No. 02580300
1400 Woodloch Forest Drive,    Suite 540
The Woodlands,    Texas 77380
Tel. (832) 381-3070    Fax. (832) 218-2400
Email:    boltz@boltzlaw.com
Attorney for    Plaintiff/Counter Defendant

Law Office of Mynde S. Eisen, P.C.

By:   /S/ Mynde S. Eisen, with permission
Mynde S. Eisen     Texas Bar No. 06503950
P.O. Box 630749     Houston, Texas 77263
Tel. (713) 266-2955     Fax. (281) 343-1089
Email:     wyndeeisen@sbcglobal.net
Attorney for     Plaintiff/Counter Defendant

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing instrument has been served upon all pro se parties and counsel of record pursuant to Rule 21a, T.R.C.P. on August 14, 2015.

Michael Boltz

## ADDITIONAL REQUESTED FINDINGS OF FACT

1. Ali took possession of Tract 5 through a Warranty Deed signed by Sylvester Anderson knowing that Sylvester Anderson's brother was half owner of the land, but did not sign the deed to Vincent James Houston and wife Martha Houston.

2. In August 2013, Blevins took possession of Tract 5 and the three acres of Tract 4 on Defendants' Agreement to sell Tracts 5 and three acres of Tract 4 to Plaintiffs by paying a down payment of $30,000.00 by paying Ali $1,250.00 every Friday beginning September 1, 2013 until February 21, 2014 to complete the $30,000 down payment. Upon the completion of the down payment, Ali would provide a formal promissory note, deed to the land and a deed of trust to secure payment.

3. Ali and then to pay monthly instalments on a loan to be delivered at the conclusion of the down payments.

4. Blevins paid each and every partial down payment.

5. As admitted by Ali, on February 14, 2014, Blevins wanted to be sure what Ali was conveying to him before he started paying the payments that would be due under the promissory note, so Ali took Blevins to the subject property and showed Blevins the 4.3 acres of Tract 5 and 3 one acre parcels in Tract 4 and stated that they are the acres he is buying and owns. Blevins with the consent and knowledge of Ali made auditory and video recordings of Ali walking the acreage with Blevins, showing Blevins the Tract 5 and Tract 4 acreage and Ali's statements that Blevins was buying and owned the displayed property. The recordings are Plaintiff's Exhibit 28 and were admitted to be true by Ali.

6. As admitted by Ali, pursuant to that confirmation, on February 21, 2014, Blevins began paying on the Promissory Note that Ali said was to come, $750 every Friday.

7. On March 7, 2014, the attorney hired by Ali to prepare the papers for the sale, Robert Penrice, sent a letter to Walker County Title to open title for the sale of all of Tracts 5 and the three acres in Tract 4. Enclosed with the letter to open title for the sale, Mr. Penrice prepared a deed describing the legal descriptions of the acreage in the two tracts, a promissory note which Blevins began paying on February 21, 2014 and the deed of trust to secure payment. He terms set out in the documents prepared by Mr. Penrice and sent to Walker County Title Company are those stated by Blevins as the terms of sale, which Blevins was performing.

8. On March 24, 2014, Lloyd Martin sent Robert Penrice a letter stating that Ali's title to Tracts 5 and 4 are uninsurable because they are clouded by 10 deeds out of and into Defendants.

9. Ali did not disclose this information to Blevins, but kept taking the $750.00 every Friday.

10. Blevins frequently requested the papers so he could close. Ali told Blevins the closing would be set, but the paperwork was delayed, but to keep on paying $750.00 every Friday.

11. To quell Blevins' anxiety, Ali gave Blevins three Warranty Deeds on June 9, 2014 representing that they were pursuant to the agreement to convey the promised property to Blevins. The deeds were false and incompetent as deeds and conveyed nothing.

12. On June 20, 2014 because Blevins lost faith in Ali's representations. Blevins went to Walker County Title Company to find out why the closing was delayed. Lloyd Martin showed Blevins his March 24, 2014 letter to Robert Penrice and told about the many attempted transfers of the subject property and that the title company would not close or insure title. After this revelation, Blevins stopped paying on loan.

13. On December 16, 2014, Ali went to Walker County Appraisal District and caused the representation of ownership of Tract 5 to be transferred back to him.

14. As of the day trial, based on the condition of title records of Tract 5, Walker County Title Company would not issue title insurance to Tract 5 on a conveyance by Ali.

15. Lloyd Martin was qualified and testified as an real estate expert and testified that in his opinion based on the information that Ali had that Ali committed fraud on Blevins.

16. Terry Blevins was the purchaser and Vincent Ali a/k/a James Vincent Houston and Martha Houston were the purchasers

17. Terry Blevins made no offer to sell anything during the transaction.

18. Michael Boltz segregated his attorney's fees into those prosecuting Plaintiff's claims and defense against the counterclaim and testified that he spent two hours at $275.00 per hour on defense of the Deceptive Trade Practice Act counterclaim.

## ADDITIONAL REQUESTED CONCLUSIONS OF LAW

1. To the extent that any of the findings fact are conclusions of law, they will be so construed. The Audio and video recordings in Plaintiff's Exhibit 28 satisfy the requirements of the Uniform Electronic Transactions Act adopted by Texas, Texas Business and Commerce Code Sections 322.001 through 322.012 to constitute the means to form an enforceable agreement.

2. To the extent that any of the findings fact are conclusions of law, they will be so construed. The terms set out in the electronic recordings in Exhibit 28, along with the documents presented to Walker County Title Company created an enforceable contract for the sale of Tract 5 and the three acres in Tract4. *Dittman v. Cerone* (Civ.App.—Corpus Christie Mem. Opinion No. 13-11-00196-CV 2013)

3. To the extent that any of the findings fact are conclusions of law, they will be so construed. Plaintiff/Counter Defendant is entitled to recover his attorney's fees based on Ali's counterclaim for DTPA under DTPA §17.50(c) and TRCP Rule 13 because Defendant/Counter Plaintiff filed a groundless counterclaim asserting that were entitled to recover under the DTPA when they knew that they were the sellers of subject real property and therefore not consumers and that Plaintiff/Counter Defendant was not a merchant.

4. To the extent that any of the findings fact are conclusions of law, they will be so construed. Terry Blevins is entitled to $550.00 in attorney's fees in defense of Defendants' Vincent Ali a/k/a James Vincent Houston and Martha Houston groundless Deceptive Trade Practice Act counterclaim.

5. To the extent that any of the findings fact are conclusions of law, they will be so construed. Ali committed statutory fraud because he represented that he owned the property and had good title when he knew that was not true.

6. To the extent that any of the findings fact are conclusions of law, they will be so construed. Defendant committed Deceptive Trade Practices because Defendant caused confusion or misunderstanding as to the source, sponsorship, approval, or certification of goods or service because (1) Defendant could not deliver good title to the real property promised and agreed to be sold (2) Plaintiff relied on Defendant's representations that Defendant would deliver good title (3) Defendant knew that Defendant could not deliver good title to the promised property or was unable to deliver good title (4) Defendant's malfeasance caused payments of $42,750.00 in payments to Defendant and $47,226.00 in additional losses to Plaintiff (5) even after being told that Walker County Title Company would not insure title, Defendant deceived Plaintiff into continuing payments and consequential losses by failing to disclose the truth and (6) delivered documents that were falsely represented to be titles to the promised properties to continue receiving instalment payments.

7. To the extent that any of the findings fact are conclusions of law, they will be so construed. Defendant committed Deceptive Trade Practices because Defendant represented that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have or that a person has a sponsorship, approval, status, affiliation, or connection which he does not, because (1) Defendant could not deliver good title to the real property promised and agreed to be sold (2) Plaintiff relied on Defendant's representations that Defendant would deliver good title (3) Defendant knew that Defendant could not deliver good title to the promised property or was unable to deliver good title (4) Defendant's malfeasance caused payments of $42,750.00 in payments to Defendant and $47,226.00 in additional losses to Plaintiff (5) even after being told that Walker County Title Company would not insure title, Defendant deceived Plaintiff into continuing payments and consequential losses by failing to disclose the truth and (6) delivered documents that were falsely represented to be titles to the promised properties to continue receiving installment payments.

8. To the extent that any of the findings fact are conclusions of law, they will be so construed. Defendant committed Deceptive Trade Practices because Defendant represented that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another, because (1) Defendant could not deliver good title to the real property promised and agreed to be sold (2) Plaintiff relied on Defendant's representations that Defendant would deliver good title (3) Defendant knew that Defendant could not deliver good title to the promised property or was unable to deliver good title (4) Defendant's malfeasance caused payments of $42,750.00 in payments to Defendant and $47,226.00 in additional losses to Plaintiff (5) even after being told that Walker County Title Company would not insure title, Defendant deceived Plaintiff into continuing payments and consequential losses by failing to disclose the truth and (6) delivered documents that were falsely represented to be titles to the promised properties to continue receiving instalment payments.

9. To the extent that any of the findings fact are conclusions of law, they will be so construed. Defendant committed Deceptive Trade Practices because Defendant advertised goods or services with intent not to sell them as advertised, because (1) Defendant could not deliver good title to the real property promised and agreed to be sold (2) Plaintiff relied on Defendant's representations that Defendant would deliver good title (3) Defendant knew that Defendant could not deliver good title to the promised property or was unable to deliver good title (4) Defendant's malfeasance caused payments of $42,750.00 in payments to Defendant and $47,226.00 in additional losses to Plaintiff (5) even after being told that Walker County Title Company would not insure title, Defendant deceived Plaintiff into continuing payments and consequential losses by failing to disclose the truth and (6) delivered

documents that were falsely represented to be titles to the promised properties to continue receiving instalment payments.

10. To the extent that any of the findings fact are conclusions of law, they will be so construed. Defendant committed Deceptive Trade Practices because Defendant failed to disclose information concerning goods or services which was known at the time of the transaction with the intention to induce the consumer into a transaction into which the consumer would not have entered had the information been disclosed, because (1) Defendant could not deliver good title to the real property promised and agreed to be sold (2) Plaintiff relied on Defendant's representations that Defendant would deliver good title (3) Defendant knew that Defendant could not deliver good title to the promised property or was unable to deliver good title (4) Defendant's malfeasance caused payments of $42,750.00 in payments to Defendant and $47,226.00 in additional losses to Plaintiff (5) even after being told that Walker County Title Company would not insure title, Defendant deceived Plaintiff into continuing payments and consequential losses by failing to disclose the truth and (6) delivered documents that were falsely represented to be titles to the promised properties to continue receiving instalment payments.

11. To the extent that any of the findings fact are conclusions of law, they will be so construed. Defendant committed Deceptive Trade Practices because Defendant advertised goods or services with intent not to supply a reasonable expectable public demand, because (1) Defendant could not deliver good title to the real property promised and agreed to be sold (2) Plaintiff relied on Defendant's representations that Defendant would deliver good title (3) Defendant knew that Defendant could not deliver good title to the promised property or was unable to deliver good title (4) Defendant's malfeasance caused payments of $42,750.00 in payments to Defendant and $47,226.00 in additional losses to Plaintiff (5) even after being told that Walker County Title Company would not insure title, Defendant deceived Plaintiff into continuing payments and consequential losses by failing to disclose the truth and (6) delivered documents that were falsely represented to be titles to the promised properties to continue receiving installment payments.

12. To the extent that any of the findings fact are conclusions of law, they will be so construed. Defendant committed Deceptive Trade Practices because Defendant breached the expressed warranties made to Plaintiff because (1) Defendant could not deliver good title to the real property promised and agreed to be sold (2) Plaintiff relied on Defendant's representations that Defendant would deliver good title (3) Defendant knew that Defendant could not deliver good title to the promised property or was unable to deliver good title (4) Defendant's malfeasance caused payments of $42,750.00 in payments to Defendant and $47,226.00 in additional losses to Plaintiff (5) even after being told that Walker County Title Company would not insure title, Defendant deceived Plaintiff into continuing payments and consequential losses by

failing to disclose the truth and (6) delivered documents that were falsely represented to be titles to the promised properties to continue receiving installment payments.

13. To the extent that any of the findings fact are conclusions of law, they will be so construed. Defendant committed Deceptive Trade Practices because Defendant breached the implied warranty of fitness for particular purpose because (1) Defendant could not deliver good title to the real property promised and agreed to be sold (2) Plaintiff relied on Defendant's representations that Defendant would deliver good title (3) Defendant knew that Defendant could not deliver good title to the promised property or was unable to deliver good title (4) Defendant's malfeasance caused payments of $42,750.00 in payments to Defendant and $47,226.00 in additional losses to Plaintiff (5) even after being told that Walker County Title Company would not insure title, Defendant deceived Plaintiff into continuing payments and consequential losses by failing to disclose the truth and (6) delivered documents that were falsely represented to be titles to the promised properties to continue receiving installment payments.

14. To the extent that any of the findings fact are conclusions of law, they will be so construed. Defendant committed Deceptive Trade Practices because Defendant breached the implied warranty of merchantability because (1) Defendant could not deliver good title to the real property promised and agreed to be sold (2) Plaintiff relied on Defendant's representations that Defendant would deliver good title (3) Defendant knew that Defendant could not deliver good title to the promised property or was unable to deliver good title (4) Defendant's malfeasance caused payments of $42,750.00 in payments to Defendant and $47,226.00 in additional losses to Plaintiff (5) even after being told that Walker County Title Company would not insure title, Defendant deceived Plaintiff into continuing payments and consequential losses by failing to disclose the truth and (6) delivered documents that were falsely represented to be titles to the promised properties to continue receiving installment payments.

15. To the extent that any of the findings fact are conclusions of law, they will be so construed. Defendant committed Deceptive Trade Practices because Defendant engaged in an unconscionable action or course of action because (1) Defendant could not deliver good title to the real property promised and agreed to be sold (2) Plaintiff relied on Defendant's representations that Defendant would deliver good title (3) Defendant knew that Defendant could not deliver good title to the promised property or was unable to deliver good title (4) Defendant's malfeasance caused payments of $42,750.00 in payments to Defendant and $47,226.00 in additional losses to Plaintiff (5) even after being told that Walker County Title Company would not insure title, Defendant deceived Plaintiff into continuing payments and consequential losses by failing to disclose the truth and (6) delivered documents that were falsely represented to be titles to the promised properties to continue receiving instalment payments.

16. To the extent that any of the findings fact are conclusions of law, they will be so construed. Defendant committed Deceptive Trade Practices because Defendant engaged in false, misleading, or deceptive acts or practices that caused severe and prolonged mental anguish, because (1) Defendant could not deliver good title to the real property promised and agreed to be sold (2) Plaintiff relied on Defendant's representations that Defendant would deliver good title (3) Defendant knew that Defendant could not deliver good title to the promised property or was unable to deliver good title (4) Defendant's malfeasance caused payments of $42,750.00 in payments to Defendant and $47,226.00 in additional losses to Plaintiff (5) even after being told that Walker County Title Company would not insure title, Defendant deceived Plaintiff into continuing payments and consequential losses by failing to disclose the truth and (6) delivered documents that were falsely represented to be titles to the promised properties to continue receiving installment payments.

17. To the extent that any of the findings fact are conclusions of law, they will be so construed. Defendant committed Deceptive Trade Practices because Defendant engaged in false, misleading, or deceptive acts or practices that were both knowing and intentional, which entitle Plaintiff to receive recovery for mental anguish and treble the mental anguish and actual damages, because (1) Defendant could not deliver good title to the real property promised and agreed to be sold (2) Plaintiff relied on Defendant's representations that Defendant would deliver good title (3) Defendant knew that Defendant could not deliver good title to the promised property or was unable to deliver good title (4) Defendant's malfeasance caused payments of $42,750.00 in payments to Defendant and $47,226.00 in additional losses to Plaintiff (5) even after being told that Walker County Title Company would not insure title, Defendant deceived Plaintiff into continuing payments and consequential losses by failing to disclose the truth and (6) delivered documents that were falsely represented to be titles to the promised properties to continue receiving installment payments.

18. To the extent that any of the findings fact are conclusions of law, they will be so construed. Defendant committed Deceptive Trade Practices because Defendant made false promises and representations to the Plaintiff to induce Plaintiff into the Contract, because (1) Defendant could not deliver good title to the real property promised and agreed to be sold (2) Plaintiff relied on Defendant's representations that Defendant would deliver good title (3) Defendant knew that Defendant could not deliver good title to the promised property or was unable to deliver good title (4) Defendant's malfeasance caused payments of $42,750.00 in payments to Defendant and $47,226.00 in additional losses to Plaintiff (5) even after being told that Walker County Title Company would not insure title, Defendant deceived Plaintiff into continuing payments and consequential losses by failing to disclose the truth and (6) delivered documents that were falsely represented to be titles to the promised properties to continue receiving installment payments.

19. To the extent that any of the findings fact are conclusions of law, they will be so construed. Defendant committed Deceptive Trade Practices because the information was material, as the Plaintiff would not have entered into the Contract had he known and Defendant knew Plaintiff was ignorant of the information, because (1) Defendant could not deliver good title to the real property promised and agreed to be sold (2) Plaintiff relied on Defendant's representations that Defendant would deliver good title (3) Defendant knew that Defendant could not deliver good title to the promised property or was unable to deliver good title (4) Defendant's malfeasance caused payments of $42,750.00 in payments to Defendant and $47,226.00 in additional losses to Plaintiff (5) even after being told that Walker County Title Company would not insure title, Defendant deceived Plaintiff into continuing payments and consequential losses by failing to disclose the truth and (6) delivered documents that were falsely represented to be titles to the promised properties to continue receiving installment payments.

20. To the extent that any of the findings fact are conclusions of law, they will be so construed. Defendant committed Deceptive Trade Practices because Defendant remained deliberately silent and did not disclose the information to the Plaintiff, because (1) Defendant could not deliver good title to the real property promised and agreed to be sold (2) Plaintiff relied on Defendant's representations that Defendant would deliver good title (3) Defendant knew that Defendant could not deliver good title to the promised property or was unable to deliver good title (4) Defendant's malfeasance caused payments of $42,750.00 in payments to Defendant and $47,226.00 in additional losses to Plaintiff (5) even after being told that Walker County Title Company would not insure title, Defendant deceived Plaintiff into continuing payments and consequential losses by failing to disclose the truth and (6) delivered documents that were falsely represented to be titles to the promised properties to continue receiving installment payments.

21. To the extent that any of the findings fact are conclusions of law, they will be so construed. Defendant committed Deceptive Trade Practices because Plaintiff justifiably relied on the Defendant's deliberate silence. By deliberately remaining silent, Defendant proximately caused injury to Plaintiff, which resulted in the delivery of the $42,500.00 and caused other expenses and losses, because (1) Defendant could not deliver good title to the real property promised and agreed to be sold (2) Plaintiff relied on Defendant's representations that Defendant would deliver good title (3) Defendant knew that Defendant could not deliver good title to the promised property or was unable to deliver good title (4) Defendant's malfeasance caused payments of $42,750.00 in payments to Defendant and $47,226.00 in additional losses to Plaintiff (5) even after being told that Walker County Title Company would not insure title, Defendant deceived Plaintiff into continuing payments and consequential losses by failing to disclose the truth and (6) delivered documents that were falsely represented to be titles to the promised properties to continue receiving installment payments.

22. To the extent that any of the findings fact are conclusions of law, they will be so construed. Defendant committed Statutory Fraud in Real Estate because Defendant made a false representation of fact, made a false promise, and benefited by not disclosing that a third party's representation or promise was false, because (1) Defendant could not deliver good title to the real property promised and agreed to be sold (2) Plaintiff relied on Defendant's representations that Defendant would deliver good title (3) Defendant knew that Defendant could not deliver good title to the promised property or was unable to deliver good title (4) Defendant's malfeasance caused payments of $42,750.00 in payments to Defendant and $47,226.00 in additional losses to Plaintiff (5) even after being told that Walker County Title Company would not insure title, Defendant deceived Plaintiff into continuing payments and consequential losses by failing to disclose the truth and (6) delivered documents that were falsely represented to be titles to the promised properties to continue receiving installment payments.

23. To the extent that any of the findings fact are conclusions of law, they will be so construed. Defendant committed Statutory Fraud in Real Estate because the false representation or promise was made for the purpose of inducing the Plaintiff into entering a contract, because (1) Defendant could not deliver good title to the real property promised and agreed to be sold (2) Plaintiff relied on Defendant's representations that Defendant would deliver good title (3) Defendant knew that Defendant could not deliver good title to the promised property or was unable to deliver good title (4) Defendant's malfeasance caused payments of $42,750.00 in payments to Defendant and $47,226.00 in additional losses to Plaintiff (5) even after being told that Walker County Title Company would not insure title, Defendant deceived Plaintiff into continuing payments and consequential losses by failing to disclose the truth and (6) delivered documents that were falsely represented to be titles to the promised properties to continue receiving installment payments.

24. To the extent that any of the findings fact are conclusions of law, they will be so construed. Defendant committed Statutory Fraud in Real Estate because the Plaintiff relied on the false representation or promise by entering into the Contract, because (1) Defendant could not deliver good title to the real property promised and agreed to be sold (2) Plaintiff relied on Defendant's representations that Defendant would deliver good title (3) Defendant knew that Defendant could not deliver good title to the promised property or was unable to deliver good title (4) Defendant's malfeasance caused payments of $42,750.00 in payments to Defendant and $47,226.00 in additional losses to Plaintiff (5) even after being told that Walker County Title Company would not insure title, Defendant deceived Plaintiff into continuing payments and consequential losses by failing to disclose the truth and (6) delivered documents that were falsely represented to be titles to the promised properties to continue receiving installment payments.

25. To the extent that any of the findings fact are conclusions of law, they will be so construed. Defendant committed Negligent Misrepresentation because the Defendant supplied false information for the guidance of Plaintiff or Plaintiff's associates, because (1) Defendant could not deliver good title to the real property promised and agreed to be sold (2) Plaintiff relied on Defendant's representations that Defendant would deliver good title (3) Defendant knew that Defendant could not deliver good title to the promised property or was unable to deliver good title (4) Defendant's malfeasance caused payments of $42,750.00 in payments to Defendant and $47,226.00 in additional losses to Plaintiff (5) even after being told that Walker County Title Company would not insure title, Defendant deceived Plaintiff into continuing payments and consequential losses by failing to disclose the truth and (6) delivered documents that were falsely represented to be titles to the promised properties to continue receiving installment payments.

26. To the extent that any of the findings fact are conclusions of law, they will be so construed. Defendant committed Negligent Misrepresentation because the Defendant did not exercise reasonable care or competence in obtaining or communicating the information, because (1) Defendant could not deliver good title to the real property promised and agreed to be sold (2) Plaintiff relied on Defendant's representations that Defendant would deliver good title (3) Defendant knew that Defendant could not deliver good title to the promised property or was unable to deliver good title (4) Defendant's malfeasance caused payments of $42,750.00 in payments to Defendant and $47,226.00 in additional losses to Plaintiff (5) even after being told that Walker County Title Company would not insure title, Defendant deceived Plaintiff into continuing payments and consequential losses by failing to disclose the truth and (6) delivered documents that were falsely represented to be titles to the promised properties to continue receiving installment payments.

27. To the extent that any of the findings fact are conclusions of law, they will be so construed. Defendant committed Negligent Misrepresentation because Plaintiff justifiably relied on the representation from Defendant, because (1) Defendant could not deliver good title to the real property promised and agreed to be sold (2) Plaintiff relied on Defendant's representations that Defendant would deliver good title (3) Defendant knew that Defendant could not deliver good title to the promised property or was unable to deliver good title (4) Defendant's malfeasance caused payments of $42,750.00 in payments to Defendant and $47,226.00 in additional losses to Plaintiff (5) even after being told that Walker County Title Company would not insure title, Defendant deceived Plaintiff into continuing payments and consequential losses by failing to disclose the truth and (6) delivered documents that were falsely represented to be titles to the promised properties to continue receiving installment payments.

28. To the extent that any of the findings fact are conclusions of law, they will be so construed. Defendant committed Negligent Misrepresentation because the Defendant's negligent misrepresentation(s) proximately caused Plaintiff damages

within the jurisdictional limits of this court, because (1) Defendant could not deliver good title to the real property promised and agreed to be sold (2) Plaintiff relied on Defendant's representations that Defendant would deliver good title (3) Defendant knew that Defendant could not deliver good title to the promised property or was unable to deliver good title (4) Defendant's malfeasance caused payments of $42,750.00 in payments to Defendant and $47,226.00 in additional losses to Plaintiff (5) even after being told that Walker County Title Company would not insure title, Defendant deceived Plaintiff into continuing payments and consequential losses by failing to disclose the truth and (6) delivered documents that were falsely represented to be titles to the promised properties to continue receiving installment payments.

29. To the extent that any of the findings fact are conclusions of law, they will be so construed. Defendant committed Negligent Misrepresentation because Defendant supplied false information in the course of their business, profession or employment, or in the course of the subject transaction, because (1) Defendant could not deliver good title to the real property promised and agreed to be sold (2) Plaintiff relied on Defendant's representations that Defendant would deliver good title (3) Defendant knew that Defendant could not deliver good title to the promised property or was unable to deliver good title (4) Defendant's malfeasance caused payments of $42,750.00 in payments to Defendant and $47,226.00 in additional losses to Plaintiff (5) even after being told that Walker County Title Company would not insure title, Defendant deceived Plaintiff into continuing payments and consequential losses by failing to disclose the truth and (6) delivered documents that were falsely represented to be titles to the promised properties to continue receiving installment payments.

30. To the extent that any of the findings fact are conclusions of law, they will be so construed. Defendant committed Negligent Misrepresentation because Defendant failed to exercise reasonable care or competence in obtaining or communicating such information, upon which Plaintiff justifiably relied and caused injury or loss to Plaintiff, because (1) Defendant could not deliver good title to the real property promised and agreed to be sold (2) Plaintiff relied on Defendant's representations that Defendant would deliver good title (3) Defendant knew that Defendant could not deliver good title to the promised property or was unable to deliver good title (4) Defendant's malfeasance caused payments of $42,750.00 in payments to Defendant and $47,226.00 in additional losses to Plaintiff (5) even after being told that Walker County Title Company would not insure title, Defendant deceived Plaintiff into continuing payments and consequential losses by failing to disclose the truth and (6) delivered documents that were falsely represented to be titles to the promised properties to continue receiving installment payments.

31. To the extent that any of the findings fact are conclusions of law, they will be so construed. Defendant committed Common Law Fraud because Defendant concealed or failed to disclose material facts within the knowledge of Defendant, that Defendant knew that Plaintiff did not have knowledge of the same and did not have

equal opportunity to discover the truth, and that Defendant intended to induce Plaintiff to enter into the transaction made the basis of this suit by such concealment or failure to disclose, because (1) Defendant could not deliver good title to the real property promised and agreed to be sold (2) Plaintiff relied on Defendant's representations that Defendant would deliver good title (3) Defendant knew that Defendant could not deliver good title to the promised property or was unable to deliver good title (4) Defendant's malfeasance caused payments of $42,750.00 in payments to Defendant and $47,226.00 in additional losses to Plaintiff (5) even after being told that Walker County Title Company would not insure title, Defendant deceived Plaintiff into continuing payments and consequential losses by failing to disclose the truth and (6) delivered documents that were falsely represented to be titles to the promised properties to continue receiving installment payments.

32. To the extent that any of the findings fact are conclusions of law, they will be so construed. Defendant committed Common Law Misrepresentation because the Defendant made material false representations to Plaintiff, which Defendant should have known were untrue, or with negligent disregard of the truth with the intention that such representations be acted upon by the Plaintiff and that Plaintiff relied on these representations to his detriment, because (1) Defendant could not deliver good title to the real property promised and agreed to be sold (2) Plaintiff relied on Defendant's representations that Defendant would deliver good title (3) Defendant knew that Defendant could not deliver good title to the promised property or was unable to deliver good title (4) Defendant's malfeasance caused payments of $42,750.00 in payments to Defendant and $47,226.00 in additional losses to Plaintiff (5) even after being told that Walker County Title Company would not insure title, Defendant deceived Plaintiff into continuing payments and consequential losses by failing to disclose the truth and (6) delivered documents that were falsely represented to be titles to the promised properties to continue receiving installment payments.

33. To the extent that any of the findings fact are conclusions of law, they will be so construed. Defendant was Unjustly Enriched because Defendant's conduct was a breach of a special trust, fiduciary relationship, or actual fraud; Defendant was enriched by the transaction; Defendant's enrichment resulted from the subject transaction, because (1) Defendant could not deliver good title to the real property promised and agreed to be sold (2) Plaintiff relied on Defendant's representations that Defendant would deliver good title (3) Defendant knew that Defendant could not deliver good title to the promised property or was unable to deliver good title (4) Defendant's malfeasance caused payments of $42,750.00 in payments to Defendant and $47,226.00 in additional losses to Plaintiff (5) even after being told that Walker County Title Company would not insure title, Defendant deceived Plaintiff into continuing payments and consequential losses by failing to disclose the truth and (6) delivered documents that were falsely represented to be titles to the promised properties to continue receiving installment payments.

34. To the extent that any of the findings fact are conclusions of law, they will be so construed. A Constructive Trust should be imposed on Defendant for the benefit of Plaintiff because Defendant was in a confidential formal or an informal trust relationship with Plaintiff that created by contract, a special trust or confidence which arose prior to the transactions in question, or there was actual fraud, which Defendant breached; Defendant was unjustly enriched, because (1) Defendant could not deliver good title to the real property promised and agreed to be sold (2) Plaintiff relied on Defendant's representations that Defendant would deliver good title (3) Defendant knew that Defendant could not deliver good title to the promised property or was unable to deliver good title (4) Defendant's malfeasance caused payments of $42,750.00 in payments to Defendant and $47,226.00 in additional losses to Plaintiff (5) even after being told that Walker County Title Company would not insure title, Defendant deceived Plaintiff into continuing payments and consequential losses by failing to disclose the truth and (6) delivered documents that were falsely represented to be titles to the promised properties to continue receiving installment payments.

35. To the extent that any of the findings fact are conclusions of law, they will be so construed. Plaintiff is entitled to Specific Performance of Defendant's duty to transfer the subject Property to Plaintiff because Plaintiff entered into a contract with Defendant or Defendant's predecessors in interest and Plaintiff fully performed all obligations, tendered full performance, was ready, willing, and able to timely perform, or was excused from performance; Defendant is the holder, owner, or party recipient of Plaintiff's consideration, benefits of the contract, or ratified the contract; Defendant failed to perform on the contract causing Plaintiff loss of the benefit of the contract, because (1) Defendant could not deliver good title to the real property promised and agreed to be sold (2) Plaintiff relied on Defendant's representations that Defendant would deliver good title (3) Defendant knew that Defendant could not deliver good title to the promised property or was unable to deliver good title (4) Defendant's malfeasance caused payments of $42,750.00 in payments to Defendant and $47,226.00 in additional losses to Plaintiff (5) even after being told that Walker County Title Company would not insure title, Defendant deceived Plaintiff into continuing payments and consequential losses by failing to disclose the truth and (6) delivered documents that were falsely represented to be titles to the promised properties to continue receiving installment payments.

36. To the extent that any of the findings fact are conclusions of law, they will be so construed. Plaintiff is entitled to recover the Real Property offered to Plaintiff by Defendant under the doctrine of Promissory Estoppel because Plaintiff is in possession of the land and Plaintiff paid monthly installments and made valuable and permanent improvements upon the land with the consent of Defendant, or without such improvements, the presence of facts as would make the transaction a fraud, because (1) Defendant could not deliver good title to the real property promised and agreed to be sold (2) Plaintiff relied on Defendant's representations that Defendant would deliver good title (3) Defendant knew that Defendant could not deliver good title to the promised property or was unable to deliver good title (4) Defendant's

malfeasance caused payments of $42,750.00 in payments to Defendant and $47,226.00 in additional losses to Plaintiff (5) even after being told that Walker County Title Company would not insure title, Defendant deceived Plaintiff into continuing payments and consequential losses by failing to disclose the truth and (6) delivered documents that were falsely represented to be titles to the promised properties to continue receiving installment payments.